5 A.3d 230

**Timothy DIEHL, Appellant**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (I.A. CONSTRUCTION and Liberty Mutual Insurance), Appellees.**

Supreme Court of Pennsylvania.

Argued April 13, 2010.

Decided Sept. 29, 2010.

256

Daniel K. Bricmont, Caroselli, Beachler, McTiernan & Conboy, L.L.C., Pittsburgh, David J. Selingo, Selingo Guagliardo, L.L.C., Kingston, for Appellant.

Thomas Patrick Cummings, Dougherty, Leventhal & Price, L.L.P., Moosic, Paul Mark Fires, Weber Gallagher Simpson & Stapleton, Philadelphia, Peter J. Weber, for IA Construction and Liberty Mutual Insurance, Appellee.

Richard C. Lengler, Harrisburg, PA, for Workers' Compensation Appeal Board.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION OF THE COURT

Chief Justice CASTILLE.

This appeal presents us with an opportunity to consider whether an employer, seeking to change a claimant's workers' compensation disability status from total disability to partial disability under 77 P.S. § 511.2, but not to change the amount of compensation, must present evidence of job availability or earning power in order to support the status change. For the reasons that follow, we affirm the Commonwealth Court's decision that an employer who seeks to change disability status under Section 511.2 while not disturbing the compensation amount need not establish job availability or earning power.

The undisputed facts giving rise to this appeal are as follows. On May 24, 1999, appellant, Timothy Diehl, sustained an injury in the course and scope of his employment, consisting of a right mid-foot fracture and calcaneus fracture. Appellee, I.A. Construction, issued a notice of compensation payable on June 7, 1999, acknowledging the injury. On April 4, 2002, appellee filed a request for designation of a physician to perform an Impaired Rating Evaluation (IRE). Michael Wolk, M.D., conducted the IRE of appellant on November 8, 2002, and issued a report on December 3, 2002, concluding that appellant's impairment rating was 28 percent.

Based upon the IRE, on January 9, 2003, appellee issued a Notice of Change of Workers' Compensation Disability Status, indicating that as of November 8, 2002, appellant's status changed from total disability to partial disability. On February 4, 2003, appellant filed a Petition to Review Medical Treatment and/or Billing, Modify Compensation Benefits and Reinstate Compensation Benefits. Appellee withdrew its notice of status change, and appellant withdrew his petitions. The Workers' Compensation Judge ("WCJ") also dismissed appellant's petitions on April 24, 2003.

On February 1, 2006, appellee filed a modification petition seeking to modify appellant's disability benefits status from total to partial disability, relying on Dr. Wolk's November 8,

2002 IRE. On October 24, 2006, the WCJ circulated a Decision and Order denying and dismissing the modification petition, concluding that, even though appellee met its burden of establishing that appellant had an impairment rating of 28 percent, appellee had failed to establish that it was entitled to a modification of appellant's status based on the IRE without a showing of the availability of suitable employment within the physical limitations appellant suffered as a result of his work-related injury. Appellee appealed to the Workers' Compensation Appeal Board ("WCAB").

On appeal to the WCAB, appellee argued that the WCJ erred in denying its modification petition and that it was entitled to modify appellant's benefit status from total to partial disability based upon Dr. Wolk's November 8, 2002 IRE. The parties stipulated that Dr. Wolk's November 8, 2002 IRE indicated that appellant had an impairment rating of 28 percent and that the WCJ determined that appellee met its burden of establishing appellant's impairment rating based upon the IRE. The WCAB reviewed the record and, on August 3, 2007, concluded that the WCJ erred by denying appellee's modification petition.

In pertinent part, Section 306(a.2) of the Workers' Compensation Act, 77 P.S. § 511.2, authorizes an automatic change of status from total to partial disability when an employer requests an IRE within 60 days after a claimant has received 104 weeks of total disability benefits and the IRE reveals that the claimant's impairment is less than 50 percent:

(1) When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and

who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

(2) If such determination results in an impairment rating that meets a threshold impairment rating that is equal to or greater than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employe shall be presumed to be totally disabled and shall continue to receive total disability compensation benefits under clause (a). If such determination results in an impairment rating less than fifty per centum impairment under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment," the employe shall then receive partial disability benefits under clause (b): Provided, however, That no reduction shall be made until sixty days' notice of modification is given.

77 P.S. § 511.2 (footnotes omitted).

There is no dispute that appellant received in excess of 104 weeks of total disability benefits and that appellee did not request an IRE within 60 days of the expiration of the 104 weeks. Thus, the WCAB concluded that appellee could not take advantage of the self-executing change of disability status permitted by Section 306(a.2). The WCAB stated that nothing precluded appellee from requesting an IRE beyond the 60–day period, but that any change in appellant's disability status based on the IRE could only be achieved through the traditional administrative process by filing a modification petition. The WCAB found that neither the Act nor *Gardner v. W.C.A.B. (Genesis Health Ventures)*, 585 Pa.366, 888 A.2d 758 (2005), imposed any burden beyond the filing of a modification petition on appellee. As to what appellee was required to demonstrate to prevail on its modification petition, the WCAB determined that, because pursuant to Section 306(a.2)(3) the amount of compensation is not affected by a change in disabili-

ty status,[1] an employer need not meet the standard of proof set forth in *Kachinski v. W.C.A.B. (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), which requires that the employer demonstrate either job availability or the claimant's earning capacity. Because the WCJ determined that appellee met its burden of proving that appellant had a 28 percent impairment rating, the WCAB found that appellee had sustained its burden on the modification petition, and appellant's disability status should change to partial disability as of the November 8, 2002 IRE.

Appellant appealed to the Commonwealth Court and, on April 28, 2008, a three-member panel of that court reversed the WCAB's decision. The panel majority agreed with the WCJ's conclusion that, in the context of a non-self-executing change in disability status, once the employer has met its burden of showing a change in the claimant's physical condition, the employer then has the burden of establishing job availability within the claimant's work-injury-related physical limitations. According to the majority, the WCJ's approach comported with *Gardner*, where this court held that an employer who requests an IRE beyond the 60 days established in Section 306(a.2) must file a modification petition and follow the "traditional administrative process." *Gardner*, 888 A.2d at 766. The panel majority stated that this Court's decision in *Gardner* provides no guidance regarding what constitutes the "traditional administrative process" for non-self-executing disability status changes under the Act.[2] Based upon its "curso-

1.  Section 306(a.2)(3) provides:
    (3) Unless otherwise adjudicated or agreed to based upon a determination of earning power under clause (b)(2), the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same. An insurer or employe may, at any time prior to or during the five hundred-week period of partial disability, show that the employe's earning power has changed. 77 P.S. § 511.2(3).

2.  Judge Simpson filed a concurring opinion agreeing with the result reached by the majority, but disagreeing that this Court provided no guidance regarding what "traditional administrative process" would apply. He pointed to the portion of the *Gardner* opinion stating that "a reduction of compensation to partial disability when the examination

ry examination" of this Court's reasoning in *Gardner*, the panel majority concluded that the mere filing of a modification petition based on the results of an IRE does not meet the requirements of the traditional administrative process. Instead, the majority held that a *Kachinski* analysis must be undertaken to satisfy the requirements of the traditional process. *Kachinski*, 532 A.2d at 380 (to establish claimant is able to return to work, employer must establish change in claimant's medical condition and "produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance"). Otherwise, the majority held, an employer who requests an IRE beyond the 60–day deadline would be required only to file the necessary paperwork—a modification petition—along with a perfunctory appearance before a WCJ in order to accomplish the same result as if the employer had requested the IRE in time for an automatic disability status change. The court concluded that, although this process would require the additional paperwork/appearance step, "it is just as automatic in practical effect as is the self-executing process." Slip. Op. at 9. The majority found that such an automatic result would be in conflict with *Gardner*, where this Court stated that "an insurer may request an employee submit to an IRE beyond the sixty-day window; the consequences of such examination, however, cannot operate to automatically reduce the claimant's benefits." *Gardner*, 888 A.2d at 767.

Appellee sought reargument in the Commonwealth Court, which the court granted, vacating the earlier panel decision in the same order. An *en banc* panel of the court then affirmed the WCAB's decision that appellee did not have to establish job availability or earning power in order to accomplish a change in appellant's disability status. *Diehl v. W.C.A.B. (I.A. Construction and Liberty Mutual Insurance)*, 972 A.2d 100 (Pa.Cmwlth.2009). The court *en banc* noted that an employer

occurs under Subsection 6 is governed by Subsection 5, which requires an adjudication or agreement under 77 P.S. § 512 before benefits may be modified. . . ." *Gardner*, 888 A.2d at 766.

typically files a modification petition in one of two circumstances—where the employer seeks to change a claimant's benefit status or where the employer seeks to reduce a claimant's amount of compensation. Under Section 306(b)(2) of the Act, the court pointed out, an employer seeking to reduce the amount of compensation must establish that the claimant has "earning power," by demonstrating that the claimant is capable of performing work and showing the availability of suitable employment; upon this showing, the employer may reduce the amount of a claimant's compensation from total disability payments to partial disability benefits.[3]

The court further noted that in 1996, the General Assembly added Section 306(a.2), which provides an alternate means of changing a claimant's disability status. Pursuant to Section 306(a.2), once a claimant has received 104 weeks of total disability benefits, the employer may request an IRE within 60 days of the expiration of the 104 weeks. If the impairment review indicates that the claimant's impairment rating is less than 50 percent, then the claimant's disability status automatically changes from total to partial disability. The amount of the claimant's compensation, however, does not change. The significance of the status change is that partial disability benefits are limited to 500 weeks in duration. According to the court, if an employer requests an IRE outside the 60–day window, the employer must establish that the claimant's impairment is less than 50 percent "via the traditional administrative process." *Gardner*, 888 A.2d at 766. The court noted that the issue in this case was what constitutes the traditional administrative process—the mere filing of a petition, or a

---

**3.** Section 306(b)(2) provides, in pertinent part:

(2) "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth.

77 P.S. § 512(2).

hearing. If a hearing is required, an additional question arises regarding what evidence an employer must present in order to prevail.

The court determined that the "traditional administrative process" encompassed more than merely filing a modification petition based upon Section 306(a.2)(5), which provides that total disability continues until a change in status is "adjudicated or agreed." 77 P.S. § 511.2(5). Regarding the evidence required to support a change in disability status, the court found that, in an IRE proceeding, the employer is not required to establish earning power. Looking to the plain meaning of the language of Section 306(a.2)(6), the court noted that the statute provides that a claimant shall submit to an IRE, and that the subsection discusses impairment, but not disability status.[4] The court then found that Section 306(a.2)(5) provides two methods for effecting a change from total to partial disability—showing a change in earning power **or** establishing an impairment rating of less than 50%:

> (5) Total disability shall continue until it is adjudicated or agreed under clause (b) that total disability has ceased or the employe's condition improves to an impairment rating that is less than fifty per centum of the degree of impairment defined under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

77 P.S. § 511.2(5).

The court rejected appellant's argument that the reference in Section 306(a.2)(5) to "clause (b)," meaning Section 306(b), mandates that appellee establish appellant's earning power. Instead, the court focused on the use of the disjunctive "or" and held that an employer can either establish under Section

4. Section 306(a.2)(6) states:
   (6) Upon request of the insurer, the employe shall submit to an independent medical examination in accordance with the provisions of section 314 to determine the status of impairment: Provided, however, That for purposes of this clause, the employe shall not be required to submit to more than two independent medical examinations under this clause during a twelve-month period.
   77 P.S. § 511.2(6) (footnote omitted).

306(b) that total disability has ceased through evidence regarding earning power **or** demonstrate that the claimant's condition has improved to a less than 50% impairment rating through the introduction of an IRE. The court held that an employer need not prove both earning power and level of impairment in order to effect a change in disability status. The court found that its conclusion was buttressed by Section 306(a.2)(3), which provides that a change in disability status does not change the amount of compensation, but that an employer may establish earning power during the 500 weeks of partial disability:

> (3) Unless otherwise adjudicated or agreed to based upon a determination of earning power under clause (b)(2), the amount of compensation shall not be affected as a result of the change in disability status and shall remain the same. An insurer or employe may, at any time prior to or during the five hundred-week period of partial disability, show that the employe's earning power has changed.

77 P.S. § 511.2(3). According to the court, this subsection allowing an employer to establish earning power to reduce the compensation amount during the 500 weeks of partial disability would make no sense if the employer were required to prove earning power in the first instance to change the claimant's disability status. The court further found it significant that the General Assembly expressly required a determination of earning power in Section 306(b) but not in Section 306(a.2).

Finally, the Commonwealth Court adverted to *Hilyer v. W.C.A.B. (Joseph T. Pastrill, Jr. Logging)*, 847 A.2d 232, 235 (Pa.Cmwlth.2004), where a three-judge panel of that court noted that the IRE procedure "was part of the General Assembly's 1996 reform effort intended to reduce rising Workers' Compensation costs and restore efficiency to the Workers' Compensation system." Citing *Hilyer*, the court stated that to require an employer to prove earning power and job availability in a Section 306(a.2) proceeding would not advance that goal for two reasons. First, a doctor who conducts an IRE renders an opinion only as to impairment, not work

capabilities or restrictions. Thus, if the employer were required to establish earning power, the claimant would necessarily have to submit to an independent medical examination and a vocational evaluation in addition to the IRE, a result the court characterized as "fly[ing] in the face of [the Commonwealth Court's] decisions in *Schachter v. Workers' Compensation Appeal Board (SPS Technologies)*, 910 A.2d 742 (Pa. Cmwlth.2006), *Weismantle v. Workers' Compensation Appeal Board (Lucent Technologies)*, 926 A.2d 1236 (Pa.Cmwlth. 2007), and *Sign Innovation v. Workers' Compensation Appeal Board (Ayers)*, 937 A.2d 623 (Pa.Cmwlth.2007), wherein we held that IRE remedies are separate from remedies involving actual ability to work." *Diehl,* 972 A.2d at 108. Second, the court found that requiring proof of both a claimant's level of impairment and earning power would render the IRE provisions meaningless because if an employer had to prove earning power, there would never be a reason to obtain an IRE outside of the 60–day window. Instead, an employer would simply pursue a modification petition based on earning power in order to reduce the claimant's compensation amount. Thus, the court concluded that an employer seeking to change a claimant's disability status outside the 60–day window must obtain an agreement or an adjudication that the claimant's impairment level is less than 50 percent but need not prove earning power or job availability. *Id.*

Judge Smith–Ribner dissented, opining that an employer must establish job availability to change a claimant's disability status where the IRE is requested outside the 60–day period. She agreed with the WCJ that once an employer has shown a change in the claimant's physical condition, the employer then has the burden of showing the availability of employment within the physical limitations imposed by the claimant's physical condition. She took issue with the notion that an employer who misses the 60–day deadline "may nonetheless accomplish the same result simply by conducting an exam at some later time, filing a modification petition and 'litigating' the matter before a WCJ, *i.e.,* by proving that the IRE result in fact was less than 50 percent and that the claimant had

reached maximum medical improvement at the time of the test." *Id.* at 111. She concluded that "logic does not support the idea that the legislature would impose a strict time requirement on an automatic change in status and then allow an employer who had not complied to obtain essentially the same remedy at any time, even years later, merely by filing a petition and presenting the IRE results." *Id.*

This Court granted review to determine whether the Commonwealth Court erred in concluding that appellee did not need to present evidence of job availability or earning power in order to change appellant's disability status from total to partial and whether the court's decision conflicts with *Gardner.* Appellant argues that prior to 1996, the Act segregated total and partial disability claims, with Section 306(a) dealing solely with total disability claims and Section 306(b) being devoted to partial disability claims.[5] Under these prior sec-

5. Section 306(a) and 306(b), 77 P.S. §§ 511 and 512, prior to the 1996 amendments read as follows:

§ 511.  Schedule of compensation for total disability

The following schedule of compensation is hereby established:

(1) For total disability, sixty-six and two-thirds per centum of the wages of the injured employe as defined in section three hundred and nine beginning after the seventh day of total disability, and payable for the duration of total disability, but the compensation shall not be more than the maximum compensation payable as defined in section 105.2. Nothing in this clause shall require payment of compensation after disability shall cease. If the benefit so calculated is less than fifty per centum of the Statewide average weekly wage, then the benefit payable shall be the lower of fifty per centum of the Statewide average weekly wage or ninety per centum of the worker's average weekly wage.

(2) Nothing in this act shall require payment of compensation for any period during which the employe is incarcerated after a conviction.

§ 512.  Schedule of compensation for disability partial in character

For disability partial in character (except the particular cases mentioned in clause (c)) sixty-six and two-thirds per centum of the difference between the wages of the injured employe, as defined in section three hundred and nine, and the earning power of the employe thereafter; but such compensation shall not be more than the maximum compensation payable. This compensation shall be paid during the period of such partial disability except as provided in clause (e) of this section, but for not more than five hundred weeks. Should total disability be followed by partial disability, the period of five hundred weeks shall not be reduced by the number of weeks during which compensation was paid for total disability. The term "earning power," as used in this section, shall in no case be less than the weekly amount

tions, according to appellant, the burden of proof to change a claimant's disability status from total to partial disability rested with the employer, with the employer being required to demonstrate that the claimant has both the physical ability and actual opportunity to resume wage earning status. To meet this burden, the employer could establish either that the claimant had actually returned to work or that the employer had referred the claimant to available positions within the claimant's post-injury physical capabilities.

Appellant states that, with the 1996 amendments, the General Assembly provided two additional methods to change a claimant's disability status: (1) the employer can establish partial disability under Section 306(b) by submitting opinion evidence concerning the claimant's earning power with reference to jobs generally available in the work force; or (2) the employer can obtain an IRE under Section 306(a.2) finding an impairment rating of less than 50 percent from the work injury. The first method is not subject to any time limitation, but a change of status based on an IRE is limited to a specific period of time. Appellant posits, correctly, that a change in status under Section 306(a.2) is self-executing only when the employer requests the IRE within 60 days of the claimant's receipt of 104 weeks of total disability benefits. When the employer requests an IRE outside of the 60–day period, however, appellant argues that the statute is clear that any change in disability status is subject to adjudication of earning power under Section 306(b). According to appellant, the Commonwealth Court's *en banc* decision ignores or overlooks subsections (3) (amount of compensation cannot change absent agreement or adjudication) and (5) (total disability continues

which the employe receives after the injury, and in those cases in which the employe works fewer than five days per week for reasons not connected with or arising out of the disability resulting from the injury shall not be less than five times his actual daily wage as fixed by the day, hour, or by the output of the employe; and in no instance shall an employe receiving compensation under this section receive more in compensation and wages combined than a fellow employe in employment similar to that in which the injured employe was engaged at the time of the injury.
77 P.S. §§ 511, 512 (footnotes omitted).

until adjudication or agreement that total disability has ceased) of Section 306(a.2). Appellant contends that the Commonwealth Court's approach defies logic because it is unfathomable that the General Assembly would impose a strict time limit on an automatic change of disability status yet allow an employer who has not complied with the time limitation to obtain the same result at any time simply by filing a petition for modification and then presenting the results of the IRE to the WCJ. Such an approach, appellant argues, leaves nothing to be adjudicated under Section 306(b).

Instead, appellant urges this Court to approve the WCJ's approach, citing to *Gardner* in support of the argument that an employer who requests an untimely IRE has a greater burden than merely filing a modification petition based upon the results of the IRE. Appellant points to the *Gardner* Court's holding that "a reduction of compensation to partial disability when the examination occurs under Subsection 6 is governed by Subsection 5, which requires an adjudication or agreement under 77 P.S. § 512 before benefits may be modified, where 'total disability or the employe's condition improves to an impairment rating that is less than fifty per centum.' 77 P.S. § 511.2(5)." *Gardner*, 888 A.2d at 766 (footnote omitted). Appellant claims that the methods of evaluating partial disability under Section 306(b) are well established and fall into three distinct categories: (1) an employer brings an injured employee back to work in a lighter duty capacity with the result that partial disability benefits are based on the average post-injury earnings compared with the pre-injury average weekly wage; (2) the employer presents evidence of job availability as per *Kachinski;* or (3) the employer utilizes opinion evidence of a claimant's post-injury earning power based upon a vocational interview and labor market survey. Based upon the continued viability of these well-established methods, appellant concludes that the Commonwealth Court's decision that an employer who requests an untimely IRE need not utilize one of these methods is contrary to *Gardner* and the language of the Act.

Appellant further argues that the Commonwealth Court misconstrued subsection (5) by relying on the word "or" to interpret the statutory language to allow an employer to achieve the identical result with an untimely IRE as with a timely IRE. Appellant claims that the court erred because its interpretation of the conjunctive "or" allows an automatic change in disability status, which is contrary to the first words of subsection (5), which states that "[t]otal disability shall continue until it is adjudicated or agreed under clause (b)" that the claimant's physical limitation has ceased. According to appellant, establishing that total disability has ceased under clause (b) requires proof of earning power in the case of an untimely IRE. The essence of appellant's argument is that the placement of the word "or" in the statute is significant and requires that total disability continues until it is established by adjudication or agreement **either** that the claimant's earning power has changed **or** that the claimant's impairment rating is less than 50 percent. In both instances, there must be an adjudication or agreement. The Commonwealth Court found instead that there must be either an adjudication or agreement that earning power has changed or an IRE showing an impairment rating of less than 50 percent.

Appellant argues that the Commonwealth Court's concern that requiring proof of earning power or job availability, in addition to an IRE, would render the IRE meaningless is unfounded. Appellant claims that the statutory scheme contemplates the possibility of multiple or subsequent IREs, which would arise where a first, timely IRE determined that the claimant's impairment rating was greater than 50 percent or his physical condition was unstable, making that first IRE premature. In either scenario, appellant contends, the employer would likely request a later, and therefore untimely, IRE. While the statute allows for these subsequent IREs, appellant argues, it does not suggest that an employer is entitled to the same automatic reduction to partial disability status as would occur with a timely IRE.

Finally, appellant claims that the perfunctory hearing below, involving the appearance before a WCJ seeking a change

in status based on the untimely IRE, does not qualify as an adjudication under the Act. First, a WCJ will rarely question the credibility of the physician who conducted the IRE because the physician is chosen, not by the parties, but by the Bureau of Worker's Compensation, and the physician must possess specific credentials. 34 Pa.Code §§ 123.103–04.[6] In addition, the evaluation itself is intended to be a standardized,

6. The pertinent sections of the Code provide:

§ 123.103. Physicians.

(a) Physicians performing IREs shall:

(1) Be licensed in this Commonwealth and certified by an American Board of Medical Specialties-approved board or its osteopathic equivalent.

(2) Be active in clinical practice at least 20 hours per week.

(b) For purposes of this subchapter, the phrase "active in clinical practice" means the act of providing preventive care and the evaluation, treatment and management of medical conditions of patients on an ongoing basis.

(c) Physicians chosen by employees to perform IREs, for purposes of appealing a previous adjustment of benefit status, shall possess the qualifications in subsection (a) and shall be active in clinical practice as specified in subsection (b).

(d) In addition to the requirements of subsections (a) and (b), physicians designated by the Department to perform IREs shall meet training and certification requirements which may include, but are not limited to, one or more of the following:

(1) Required attendance at a Departmentally approved training course on the performance of evaluations under the AMA "Guides to the Evaluation of Permanent Impairment."

(2) Certification upon passage of a Departmentally approved examination on the AMA "Guides to the Evaluation of Permanent Impairment."

(3) Other requirements as approved by the Department.

§ 123.104. Initial IRE; designation of physician by Department.

(a) The insurer is responsible for scheduling the initial IRE. Only the insurer may request that the Department designate an IRE physician.

(b) The Department's duty to designate an IRE physician pertains only to the initial IRE. A list of Departmentally approved IRE physicians will be available upon request.

(c) The request to designate a physician shall be made on Form LIBC–766, "Request for Designation of a Physician to Perform an Impairment Rating Evaluation."

(d) Within 20 days of receipt of the designation request, the Department will designate a physician to perform the IRE.

(e) The Department will provide the name and address of the physician designated to perform the IRE to the employee, the insurer and the attorneys for the parties, if known.

34 Pa.Code §§ 123.103–123.104.

objective assessment based upon AMA guidelines such that even if competing physicians perform an IRE on the same claimant, the results should vary only by a few percentage points, which would rarely affect the outcome of a hearing on the claimant's disability status. Thus, appellant contends, in most cases, as in the case *sub judice,* the hearing process will be almost as self-executing as if the employer had requested a timely IRE. Appellant argues that this perfunctory process cannot be what the *Gardner* Court envisioned when it held that a reduction in disability status based on an untimely IRE must be achieved through the "traditional administrative process."

Appellee responds that the Commonwealth Court correctly found that there are two methods for effecting a change in disability status: (1) by establishing a change in earning power; or (2) by showing an impairment rating of less than 50 percent. Appellee disagrees with appellant regarding the placement of the word "or" and urges this Court to adopt the Commonwealth Court's reading of the statute, which does not require a showing of earning power where there exists an IRE showing an impairment rating of less than 50 percent. Appellee points to the language of the statute for support, noting that subsection (3) provides that the amount of compensation shall not be affected "unless otherwise adjudicated or agreed to based upon a determination of earning power under clause (b)(2)" while subsection (5) does not contain the language regarding earning power. 77 P.S §§ 511.2(3) and (5). Appellee contends that, if the General Assembly had intended to require the employer to demonstrate earning power in subsection (5), it would have used the same language employed in subsection (3) explicitly referencing earning power. Instead, according to appellee, the General Assembly referred generally to Section 306(b), which establishes the payment schedule for partial disability and limits partial disability to 500 weeks.

Appellee further argues that the IRE process is distinct from the other remedies previously provided by the Act, citing *Sign Innovation v. W.C.A.B. (Ayers),* 937 A.2d 623 (Pa. Cmwlth.2007). In that case, according to appellee, the Com-

monwealth Court concluded that an employer was entitled to pursue a modification petition based on earning power at the same time it pursued an IRE remedy based upon a timely IRE showing an impairment rating of exactly 50 percent. Based upon *Sign Innovation*, appellee contends that the IRE process is separate from and in addition to remedies previously available under the Act and, therefore, it is not subject to the same requirements as the other remedies.

In addition, appellee argues that "impairment" and "disability" are not equivalent terms. "Impairment" is defined in the Act as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent." 77 P.S. § 511.2(8)(i). "Disability," on the other hand, has been defined by this Court as "the loss of earning power attributable to the work-related injury." *See, e.g., Landmark Constructors, Inc. v. W.C.A.B. (Costello)*, 560 Pa.618, 747 A.2d 850, 854 (2000). Thus, appellant claims that the focus of an IRE would be on impairment, not disability, and would not provide an employer with the information regarding the claimant's physical capabilities the employer would need to perform a labor market survey or to meet the burden of proof under *Kachinski*, citing *Weismantle v. W.C.A.B. (Lucent Technologies)*, 926 A.2d 1236, 1240 (Pa. Cmwlth.2007) ("[A]n IRE is quite different in scope from an independent medical examination undertaken to determine whether a claimant can perform the pre-injury job."). If appellant's argument that an untimely IRE is not sufficient to warrant relief were to be credited, appellee argues, there would never be a reason for an employer to obtain an IRE outside of the 60–day window because the employer would also have to obtain an independent medical examination in order to acquire the information it needed to assess earning power. Appellee contends that this is contrary to the Act, which contemplates the possibility of multiple IREs. 77 P.S. §§ 511.2(5) and (6).

Appellee further claims that the Commonwealth Court's decision is consistent with *Gardner*, where this Court held that an IRE requested beyond the 60–day period cannot

operate to automatically reduce the claimant's disability status, but instead, the change in status requires an adjudication or agreement under 77 P.S. § 512. The *Gardner* Court, according to appellee, held that an IRE requested in a timely manner results in a self-executing reduction in disability status, while an untimely IRE affords an employer the opportunity to change status via the traditional administrative process, and the Commonwealth Court's decision is consistent with this holding. Appellee contends that the Commonwealth Court found that to allow an employer to obtain an IRE after the 60–day window but also require proof of earning power essentially nullifies the IRE remedy. Thus, appellee agrees with the Commonwealth Court's conclusion that subsection (5) affords an employer the traditional remedy of demonstrating earning power or the second supplemental method of securing an IRE and presenting the results via a petition for modification. Appellee argues that requiring proof of available employment or earning power in addition to the IRE does not supplement the traditional approach for securing a change in disability status, rather it is the traditional approach. Thus, the approach advocated by appellant fails to incorporate the concept of an IRE in any meaningful way.

Finally, appellee argues that the Commonwealth Court correctly concluded that appellee was entitled to a change in disability status in this instance based upon appellee's showing that appellant's impairment was 28 percent as of November 8, 2002. Appellee contends that a hearing on an untimely IRE is an actual hearing with notice and an opportunity to be heard with the ability to submit relevant evidence in support of or opposition to the employer's burden of proof. Here, appellant's counsel stipulated to the results of the IRE, but that does not ineluctably lead to the conclusion that there will never be issues in dispute in other cases. In actual practice, according to appellee, a hearing before a WCJ often involves a deposition of the physician who conducted the IRE where the physician is subjected to cross-examination by the claimant's counsel, and the physician's testimony is subject to the same credibility evaluation by the WCJ as in any other workers' compensation proceeding. Thus, appellee argues, any reduc-

tion in disability status resulting from such a proceeding would not be self-executing but rather would result from the traditional administrative process involving the filing of a modification petition followed by a hearing before a WCJ at which testimony, subject to cross-examination and credibility findings, was presented. Contrary to appellant's claim, appellee contends that this does not grant an employer who requests an untimely IRE the identical relief the employer could have obtained with a timely IRE because a hearing before a WCJ is not perfunctory or meaningless.

Appellee points specifically to other areas in the Act where an employer or insurer who misses a time limit for certain relief is still able to obtain the same relief by filing a petition and then presenting a WCJ with credible evidence of its entitlement to relief. *See, e.g.,* 77 P.S. §§ 774.2 and 774.3 (insurer may modify or suspend compensation upon claimant's return to work if insurer provides written notice of suspension or modification within seven days of suspension); 77 P.S. § 774(1) (employer has right to special supersedeas hearing in conjunction with termination petition if petition is filed within 21 days). In both instances, if the time limitation is not met, the employer or insurer may file a petition and obtain the same relief, but not automatically, by following the traditional process of a hearing before a WCJ. Appellee concludes that these other instances belie appellant's assertion that the result reached by the Commonwealth Court could not have been contemplated by the General Assembly or this Court.

■■ This appeal presents an issue of statutory construction, which is a pure question of law. Our standard of review of a pure question of law is de novo, and our scope of review is plenary. *Lynnebrook and Woodbrook Assocs., L.P. v. Borough of Millersville,* 600 Pa. 108, 963 A.2d 1261, 1263 (2008). Pursuant to the Statutory Construction Act, a court's proper role in interpreting and construing a statute is to determine the intent of the General Assembly. 1 Pa.C.S. § 1921(a). Generally, when the language of a statute is clear and free from all ambiguity, a court should not disregard the letter of the statute in order to pursue its spirit. 1 Pa.C.S. § 1921(b);

*Spahn v. Zoning Bd. of Adjustment,* 602 Pa. 83, 977 A.2d 1132, 1142 (2009). There is no argument by any party that the statutory provisions at issue are ambiguous; thus, we are guided by the plain language of the statute itself.

The pertinent provision of Section 306(a.2)(5), reads as follows:

> (5) Total disability shall continue until it is adjudicated or agreed under clause (b) that total disability has ceased or the employe's condition improves to an impairment rating that is less than fifty per centum of the degree of impairment defined under the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

77 P.S. § 511.2(5). The interpretation of this subsection begins with the word "or" in that we are tasked with interpreting the language of the statute with its distinct clauses to achieve a reasonable result. On the one hand, the language could be read to mean that total disability continues until it is adjudicated or agreed that **either** total disability has ceased **or** that the claimant has an impairment rating of less than 50 percent, as appellant urges. On the other hand, it could be read to mean that total disability continues **either** until it is adjudicated or agreed that total disability has ceased **or** until the claimant's impairment rating is below 50 percent. Our decision in *Gardner* counsels that the first reading, that total disability continues until it is adjudicated or agreed that either total disability has ceased or the impairment rating is less than 50 percent, is the correct reading of the statutory language. In *Gardner,* we unequivocally held that an untimely IRE cannot give rise to an automatic reduction in disability status, but instead requires an adjudication or agreement pursuant to subsection (5). *Gardner,* 888 A.2d at 766 (footnote omitted). Thus, consistent with *Gardner,* an employer who requests an IRE outside the 60–day window and seeks to reduce a claimant's disability status based upon the IRE must do so through an adjudication or agreement.

We then turn to what, consistent with the statutory scheme, an employer must establish at such an adjudication in

order to secure a change in a claimant's disability status from total to partial disability. In this regard, we find appellee's argument concerning the distinction between disability and impairment to be central to the resolution of this question. Impairment and disability are not interchangeable terms. As appellee contends, impairment is statutorily defined as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent," 77 P.S. § 511.2(8)(i), while disability is "the loss of earning power attributable to the work-related injury." *Landmark Constructors*, 747 A.2d at 854. Impairment, therefore, deals with the physical aspects of the claimant's injury without regard to the impact on the claimant's earning power occasioned by the injury. Disability concerns loss of earning power without focusing on the physical limitations responsible for the loss of earning potential. What constitutes proof of impairment would necessarily vary greatly from evidence of disability.

█ The question of proof of disability is easily answered by reference to Section 306(b), which sets forth precisely the evidence needed to establish a claimant's earning power:

(2) "Earning power" shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply. If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe

to submit to an interview by a vocational expert who is selected by the insurer and who meets the minimum qualifications established by the department through regulation. The vocational expert shall comply with the Code of Professional Ethics for Rehabilitation Counselors pertaining to the conduct of expert witnesses.

77 P.S. § 512(2).

Because the definition of impairment does not contemplate or encompass earning power, logic dictates that the evidence required to establish impairment would be different from that required by Section 306(b). By enacting Section 306(a.2), our General Assembly created the IRE process in order to provide employers with a mechanism whereby they can establish a claimant's degree of impairment. Section 306(a.2) specifies the qualifications required of the physician performing an IRE and the guidelines for the performance of the examination:

The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

77 P.S. § 511.2(1). The Pennsylvania Code at 34 Pa.Code § 123.103 provides further details regarding the qualification of the performing physician. *See* fn. 6, *supra.*

■ The purpose of an IRE is to establish a claimant's degree of impairment, not to determine the claimant's earning power. Indeed, the Legislature did not so much as mention earning power in Section 306(a.2). The Legislature also highlighted the distinction between impairment status and earning power in subsection (3), which provides that the amount of compensation does not change when a claimant's status is changed to partial disability. According to subsection (3), even though the amount of compensation is unaffected by the change in disability status, "[a]n insurer or employe may, at

any time prior to or during the five hundred-week period of partial disability, show that the employe's earning power has changed." 77 P.S. § 511.2(3). This language demonstrates unambiguously that the Legislature contemplated that earning power and impairment status would involve different determinations.

Given the clear guidance from the General Assembly, we find that the means by which an employer can establish that a claimant's disability status has changed from total disability to partial disability is through an IRE, regardless of whether the IRE is requested within the 60–day window. If the IRE is requested within the 60–day period and the claimant's impairment rating is less than 50 percent, then the change in disability status is automatic. If, however, the employer requests the IRE outside of the 60–day window and claims that the claimant's impairment rating is less than 50 percent, the IRE merely serves as evidence that the employer may use at a hearing before a WCJ on the employer's modification petition to establish that the claimant's disability status should be changed from total to partial. In that event, the IRE becomes an item of evidence just as would the results of any medical examination the claimant submitted to at the request of his employer. It is entitled to no more or less weight than the results of any other examination. The physician who performed the IRE is subject to cross-examination, and the WCJ must make appropriate credibility findings related to the IRE and the performing physician. The claimant, obviously, may introduce his own evidence regarding his degree of impairment to rebut the IRE findings.

This holding is consistent with our decision in *Gardner* that an untimely IRE does not result in a self-executing change in disability status but rather such a change must be achieved through the traditional administrative process. The holding also comports with the legislative intent behind Section 306(a.2), which is to ensure efficiency within the workers' compensation system. Further, requiring an employer who has requested an IRE that results in an impairment rating of less than 50 percent to also produce evidence of earning power

or job availability, as the Commonwealth Court noted, would essentially render the IRE process a nullity. If the employer must also prove earning power and job availability, there is simply no reason to avail itself of the streamlined, more efficient IRE process.

█ Thus, we hold that the Commonwealth Court on reargument correctly concluded that an employer seeking to reduce a claimant's disability status based upon an untimely IRE, and without a change in the amount of compensation, need not present evidence of earning power or job availability. The results of the IRE, if found credible by a WCJ, may be sufficient evidence to support a change in the claimant's disability status.

The decision of the Commonwealth Court is affirmed.

Justices SAYLOR, EAKIN, BAER, TODD, McCAFFERY and ORIE MELVIN join the opinion.