# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny and UPMC :
Benefit Management Services, Inc., :
     Petitioners :
          :
    v.      :
          :
Workers' Compensation Appeal :
Board (Butkus),    : No. 486 C.D. 2020
     Respondent : Submitted: December 18, 2020


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
      HONORABLE P. KEVIN BROBSON, Judge[1]
      HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION
BY JUDGE FIZZANO CANNON   FILED: April 29, 2021


    The County of Allegheny, together with UPMC Benefit Management Services, Inc. (jointly, Employer), petitions for review of an order of the Workers' Compensation Appeal Board (Board) dated April 30, 2020, affirming the order of a workers' compensation judge (WCJ). The WCJ granted the Petition to Modify Compensation Benefits (Modification Petition) filed by Stanley Butkus (Claimant), seeking to change his partial disability status to total disability. The WCJ reinstated Claimant's total disability status as of September 1, 2016, the date on which Claimant filed the Modification Petition, in accordance with this Court's decision in *Whitfield v. Workers' Compensation Appeal Board (Tenet Health System*

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

*Hahnemann LLC)*, 188 A.3d 599 (Pa. Cmwlth. 2018). Upon review, we affirm the Board's order.

## I. Background

In September 2006, Claimant was injured in the scope of his employment. Certified Record (C.R.) Item #7 (WCJ Op. & Order 5/24/19) at 1. Employer accepted the injury by a Medical-Only Notice of Compensation Payable in February 2007, effective as of the day after Claimant's injury.[2] *Id.*

In subsequent litigation concerning the scope of the work injury and Claimant's continuing symptoms, the WCJ concluded in May 2009 that Claimant suffered right foot and ankle injuries resulting in ongoing reflex sympathetic dystrophy.[3] C.R. Item #7 (WCJ Op. & Order 5/24/19) at 1. The WCJ concluded Claimant's ongoing back problems were not work-related. *Id.* The Board affirmed that decision. *Id.*

In August 2011, an impairment rating evaluation (IRE) of Claimant was performed at Employer's request, and Claimant was assigned an impairment rating of 10% based on the guidelines in the Sixth Edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (AMA *Guides*). C.R. Item #40 (Impairment Rating Determination 8/3/11) at 2. Accordingly, in October 2011, the WCJ issued a modification of Claimant's status from total to

---

[2] In September 2007, Claimant's benefits were suspended. Certified Record (C.R.) Item #7 (WCJ Op. & Order 5/24/19) at 4. Although the record does not specifically indicate when benefits resumed, the workers' compensation judge (WCJ) concluded they resumed at some point. *Id.* at 4 n.1. The parties do not dispute the resumption of benefits, and the date of resumption is not material to the issues here.

[3] Also known as complex regional pain syndrome, or CRPS, Type 1, reflex sympathetic dystrophy, or RSD, is a rare chronic pain syndrome that typically occurs after injury to a limb. Its cause is not fully understood. *See* https://www.mayoclinic.org/diseases-conditions/crps-complex-regional-pain-syndrome/symptoms-causes/syc-20371151 (last visited April 28, 2021).

partial disability[4] as of the date of the IRE.  C.R. Item #43 (WCJ Op. & Order 10/14/11) at 2.

In September 2015, this Court decided *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 124 A.3d 406 (Pa. Cmwlth. 2015) (*Protz I*), *aff'd in part and rev'd in part*, 161 A.3d 827 (Pa. 2017) (*Protz II*).  In *Protz I*, this Court found that former Section 306(a.2) of the Workers' Compensation Act (WC Act), *former* 77 P.S. § 511.2(2), providing for IREs with reference to the most recent edition of the AMA *Guides*, constituted an unconstitutional delegation of legislative authority because it essentially adopted each new edition of the AMA *Guides* without legislative review.  *See Protz I*, 124 A.3d at 417.  Therefore, in *Protz I* and subsequent cases where the issue was preserved, this Court vacated decisions where changes in disability status had been based on IREs performed using the Fifth or later edition of the AMA *Guides* and remanded those matters for application of the Fourth Edition of the AMA *Guides*, the edition in effect when former Section 306(a.2) was enacted.  *Whitfield*, 188 A.3d at 601.

As noted above, former Section 306(a.2)(2) provided that an impairment rating of less than 50% would trigger a modification of a claimant's disability status from total to partial disability.  On September 1, 2016, Claimant filed the Modification Petition, seeking a change of his disability status from partial

---

[4] Under former Section 306(a.2)(2) of the Workers' Compensation Act (WC Act), Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350, *former* 77 P.S. § 511.2(2), repealed by Act of October 24, 2018, P.L. 714, an impairment rating of less than 50% would trigger a modification of a claimant's disability status from total to partial disability.  *See Whitfield v. Workers' Comp. Appeal Bd. (Tenet Health Sys. Hahnemann LLC)*, 188 A.3d 599, 602 n.3 (Pa. Cmwlth. 2018) (citing *former* Section 306(a.2)(2) of the WC Act).  Under Section 306(b)(1) of the WC Act, modification of status from total to partial disability does not reduce the amount of a workers' compensation claimant's weekly wage benefits, but it limits the duration of future wage benefits to 500 weeks following the modification date.  77 P.S. § 512(1); *Whitfield*, 188 A.3d at 602 n.2.

3

disability back to total disability based on this Court's decision in *Protz I*. C.R. Item #2.

Our Supreme Court granted allocatur in *Protz I* on March 22, 2016, several months before Claimant filed the Modification Petition. *See Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 133 A.3d 733 (Pa. 2016). In June 2017, while Claimant's Modification Petition was pending, our Supreme Court decided that appeal. *See Protz II*. In *Protz II*, the Supreme Court affirmed this Court's conclusion regarding the unconstitutional delegation of legislative authority, but found the language in former Section 306(a.2) applying the most recent edition of the AMA *Guides* could not be severed from the rest of former Section 306(a.2); therefore, the Supreme Court ruled that former Section 306(a.2) was invalid in its entirety. *Protz II*, 161 A.3d at 840-41.

In October 2018, several months after this Court's decision in *Whitfield*, Governor Wolf signed into law Act 111 of 2018 (Act 111),[5] adding Section 306(a.3) of the WC Act, 77 P.S. § 511.3. Act 111 altered the criteria for determining whether a claimant's disability is total or partial, providing that an impairment rating of 35% or more would constitute total disability. Section 306(a.3)(2) of the WC Act, 77 P.S. § 511.3(2). Act 111 also provided that future IREs are to be performed pursuant to the Sixth Edition, second printing (April 2009) of the AMA *Guides*. Section 306(a.3)(1) of the WC Act, 77 P.S. § 511.3(1). Notably, Section 306(a.3)(2), added by Act 111, also reenacted the 60-day limitations period for challenging status modifications that had previously applied under former Section 306(a.2)(2). *See* 77 P.S. § 511.3(2).

---

[5] Act of October 24, 2018, P.L. 714, No. 111. "Act 111 [of 2018] repealed former Section 306(a.2) of the WC Act and added Section 306(a.3) to the WC Act, which amended the WC Act's IRE provisions." *Cantanese v. Workers' Comp. Appeal Bd. (RTA Servs. Co.)*, 242 A.3d 1, 2 n.3 (Pa. Cmwlth. 2020).

On May 24, 2019, the WCJ granted Claimant's requested modification from partial to total disability status as of the date of the Modification Petition. C.R. Item #7 (WCJ Op. & Order 5/24/19) at 8. Employer appealed the WCJ's order to the Board, which affirmed the WCJ. C.R. Item #10 (Bd. Order 4/4/20) at 8. Employer then petitioned for review by this Court.

## II. Issues

Employer raises three issues in its petition for review before this Court, which we paraphrase as follows:[6]

1.  The Board erred in affirming the reinstatement of Claimant's total disability benefits in reliance on *Whitfield*, because *Whitfield* erroneously applied Section 413(a) of the WC Act to grant relief allowed only under former Section 306(a.2).

2.  The Board erred in affirming the reinstatement of Claimant's total disability benefits, where the WCJ failed to allow Employer to present evidence concerning Claimant's earning power.

3.  The Board erred in affirming the reinstatement of Claimant's total disability benefits, where the WCJ and the Board improperly applied *Protz II* retroactively.

Pet. for Rev. at 8. Employer asserts related sub-arguments concerning waiver, law of the case, laches, and Claimant's burden to demonstrate that his work injury continues in order to obtain modification to total disability status.

---

[6] "This Court's review in workers' compensation appeals is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Whitfield*, 188 A.3d at 605 n.6.

### III. Discussion

### A. Time Limit to Challenge Modification

"In the intervening time between *Protz I* and *Protz II*, a number of claimants whose disability status had been modified based on what are now considered unconstitutional IREs . . . filed petitions seeking to have their status reinstated from partial disability to total disability." *Whitfield*, 188 A.3d at 602. Claimant here, like those referenced in *Whitfield*, filed his Modification Petition after this Court's decision in *Protz I* and before our Supreme Court's decision in *Protz II*. Also, like the claimant in *Whitfield*, Claimant here sought a reinstatement of his total disability status because the 2011 modification of his status to partial disability was based on an IRE performed under a later edition of the AMA *Guides*, rather than the Fourth Edition as mandated by this Court's decision in *Protz I*. Claimant's circumstances are therefore closely analogous to those of the claimant in *Whitfield*.

This Court in *Whitfield* encapsulated its decision as follows:

> At issue before us is whether [the c]laimant is entitled to the benefit of *Protz II* when her disability status had been modified in 2008 and she had not challenged the constitutionality of the IRE upon which the modification was based for more than seven years. *Because [the c]laimant filed her Petition to Reinstate . . . within three years of the date of the most recent payment of compensation, we hold she has a statutory right to seek reinstatement under Section 413(a) of the WC Act, 77 P.S. § 772.*

*Id.* at 602 (emphasis added).

This case presents the same issue. Claimant's disability status was modified in 2011. Like the *Whitfield* claimant, he did not challenge the constitutionality of the 2011 IRE and resulting modification until several years later. Nonetheless, because he is still receiving wage benefits, he has, by definition,

6

asserted his challenge within three years after the last payment of compensation. Therefore, if *Whitfield* applies here, it is dispositive of Employer's petition for review.

Employer argues, however, that *Whitfield* is not applicable to this matter. Employer asserts that *Whitfield* was wrongly decided under Section 413(a) instead of Section 306(a.2) of the WC Act. We disagree. At the time this Court decided *Whitfield*, our Supreme Court's decision in *Protz II* had invalidated former Section 306(a.2) of the WC Act in its entirety, including the 60-day limit in Section 306(a.2)(2) for seeking review of a modification decision. However, Act 111, which reinstated the 60-day limit by adding Section 306(a.3)(2) to the WC Act, had not yet been enacted. Therefore, in *Whitfield*, there was no 60-day statutory time limit for this Court to apply. *See Whitfield*, 188 A.3d at 611. In considering what, if any, time limit would apply, this Court concluded that Section 413(a), which allows modification requests until three years after the last payment of compensation, was the applicable limitation on challenges to modifications of claimants' status from total to partial disability. *Id.* at 617.

Here, however, Claimant's Modification Petition was still pending when Act 111 was enacted, and the WCJ did not decide the petition until several months later. Thus, we must determine whether the 60-day limit in Section 306(a.3)(2) applies retroactively to the Modification Petition. Absent such retroactivity, *Whitfield* will control the outcome here.

This Court recently considered retroactive application of Section 306(a.3) in another context. *See Pierson v. Workers' Comp. Appeal Bd. (Consol. Pa. Coal Co.)* (Pa. Cmwlth., No. 423 C.D. 2020, filed Feb. 9, 2021), 2020 Pa.

7

Commw. Unpub. LEXIS 627 (unreported).[7]  The claimant in *Pierson* argued that Section 306(a.3) could not be applied retroactively to affect the 500 weeks of benefits payable for partial disability by giving the employer credit for payments made before Act 111's enactment.  *Pierson*, slip op. at 8-9, 2020 Pa. Commw. Unpub. LEXIS 627 at *11-12.  This Court disagreed.  We observed that "there are reasonable expectations under the [WC] Act that benefits may change . . ." and, further, that "the General Assembly made it clear in Act 111 that weeks of [temporary total disability] and partial disability paid by an employer/insurer prior to the enactment of Act 111 count as credit against an employer's new obligations under Act 111."[8]  *Id.*, slip op. at 16, 2020 Pa. Commw. Unpub. LEXIS 627 at *21-22 (citing Section 3(2) of Act 111, 77 P.S. § 511.3, Historical and Statutory Notes; *Rose Corp. v. Workers' Comp. Appeal Bd. (Espada)*, 238 A.3d 551, 561-62 (Pa. Cmwlth. 2020) (*en banc*)).

"We have long held that 'statutes are to be construed to operate prospectively,' absent clear language to the contrary."  *City of Warren v. Workers' Comp. Appeal Bd. (Haines by Haines)*, 156 A.3d 371, 376 (Pa. Cmwlth. 2017) (quoting *Dep't of Labor and Indus., Bureau of Emp. Sec. v. Pa. Eng'g Corp.*, 421 A.2d 521, 523 (Pa. Cmwlth. 1980)); *see Pierson*, slip op. at 17, 2020 Pa. Commw. Unpub. LEXIS 627 at *23 (quoting *City of Warren*, 156 A.3d at 376); *see also*

---

[7] Although unreported, this opinion is cited as persuasive authority pursuant to this Court's Internal Operating Procedures.  210 Pa. Code § 69.414(a).

[8] "Section 3(2) of Act 111 states: 'For the purposes of determining the total number of weeks of partial disability compensation payable under Section 306(a.3)(7) of the Act, [77 P.S. § 511.3(7),] an insurer shall be given credit for weeks of partial disability compensation paid prior to the effective date of this paragraph.'"  *Pierson v. Workers' Comp. Appeal Bd. (Consol Pa. Coal Co.)* (Pa. Cmwlth., No. 423 C.D. 2020, filed Feb. 9, 2021), slip op. at 6, 2020 Pa. Commw. Unpub. LEXIS 627, *7 (unreported) (quoting 77 P.S. §511.3, Historical and Statutory Notes).

8

Section 1926 of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."). In *Pierson*, this Court concluded "it is clear that the General Assembly intended for the 104-week and credit weeks provisions of Act 111 to be given retroactive effect, where, as we noted in *Rose Corporation*, it stated in plain language it was doing so." *Pierson*, slip op. at 17, 2020 Pa. Commw. Unpub. LEXIS 627 at *23.

Our conclusion in *Pierson* was consistent with this Court's reasoning in *Rose Corporation*. There, the claimant was injured in 2006 and his disability status was modified from total to partial in 2013, based on an IRE performed under *former* Section 306(a.2)(1), applying the Sixth Edition of the AMA *Guides*. *Rose Corp.*, 238 A.3d at 553-54. After our Supreme Court decided *Protz II*, the claimant in *Rose Corporation* filed a petition in 2017 seeking reinstatement of total disability status. *Id.* at 555. As in *Whitfield*, the reinstatement petition was decided prior to the enactment of Act 111. However, the employer's appeal from that decision to the Board was still pending when Act 111 was enacted. *Id.* at 553. The employer argued that Act 111 merely reenacted prior law in providing for application of the Sixth Edition of the AMA *Guides*; therefore, because the claimant's partial disability status was based on a 2013 IRE applying the Sixth Edition of the AMA *Guides*, the employer argued Act 111 retroactively reinstated the validity of the 2013 IRE. *Id.* at 557.

This Court determined that Act 111 effected substantive changes in the law, and thus, was not merely a procedural enactment. *Rose Corp.*, 238 A.3d at 563. Because substantive changes in the law require express legislative language providing for retroactive application, and because such language is lacking in Act 111 (with the exception of the credits at issue in *Pierson*), this Court concluded in

9

*Rose Corporation* that Act 111 could not be applied retroactively to validate an IRE performed prior to its enactment. *Id*. at 562-63.

We find the reasoning of *Pierson* and *Rose Corporation* persuasive concerning retroactive application of Act 111. Accordingly, we conclude the portions of Act 111 not given express retroactive effect were not intended by the legislature to have retroactive application.

The 60-day time limit for challenging modifications enacted in Section 306(a.3)(2) of Act 111 contains no express retroactivity provision; nor do the Historical and Statutory Notes to Section 3 of Act 111, 77 P.S. § 511.3, contain any indication that Section 306(a.3)(2) should apply retroactively. This Court therefore concludes that, as with the IRE provision of Section 306(a.3)(1) at issue in *Rose Corporation*, the legislature did not intend the 60-day time limit of Section 306(a.3)(2) to apply retroactively to Claimant's Modification Petition, which was filed before Act 111's enactment.

We also reject Employer's related sub-arguments. We rejected a similar waiver argument in *Whitfield*. *See* 188 A.3d at 611 & 616 (*Protz II* struck the IRE process from the WC Act, and claimant raising the constitutionality after *Protz II* was doing so at the first opportunity). We likewise rejected a similar argument concerning the law of the case doctrine in *Dana Holding Corporation v. Workers' Compensation Appeal Board (Smuck)*, 195 A.3d 635, 644 (Pa. Cmwlth. 2018), *aff'd* 232 A.3d 629 (Pa. 2020) ("a party should not be able to claim that its constitutional right to the due course of law is being violated and that it should be able to continue to benefit from an unconstitutional law to the detriment of another party whose rights were affected by that unconstitutional law"). Finally, we rejected a similar laches argument in *Whitfield*. *See* 188 A.3d at 616 ("because a claimant either still receiving or recently receiving benefits may seek modification, so long as

10

the petition is filed within three years of the date of the most recent payment of compensation, it does not upset an employer's expectation of finality").

Accordingly, consistent with our holding of *Whitfield*, we hold here that Claimant's Modification Petition was timely.

## B. Evidence Concerning Claimant's Earning Power

Employer contends it was improperly denied "the opportunity, as part of this litigation, to pursue other potential defenses through the establishment of earning power, which would demonstrate that [] Claimant's disability benefits status should be temporary partial disability, at least as of the date such work was found open and available within the Claimant's physical capabilities." Br. of Pet'r at 26-27. Employer agues evidence of earning power is relevant to a determination of whether Claimant remains totally disabled. *Id.* We discern no merit in this argument.

In *Diehl v. Workers' Compensation Appeal Board (I.A. Construction)*, 5 A.3d 230 (Pa. 2010), our Supreme Court considered the distinction between modification petitions based on IREs, which relate to a claimant's degree of impairment, and modification petitions based on alleged changes in a claimant's earning power. The Court explained:

> Impairment and disability are not interchangeable terms . . . . [I]mpairment is statutorily defined as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent," [Section 306(a.3)(8)(i) of the WC Act,] 77 P.S. § [511.3(8)(i)], while disability is "the loss of earning power attributable to the work-related injury." *Landmark Constructors* [*v. Workers' Comp. Appeal Bd. (Costello)*], 747 A.2d [850,] 854 [Pa. 2000]. Impairment, therefore, deals with the physical aspects of the claimant's injury without regard to the impact on the claimant's earning

11

power occasioned by the injury. Disability concerns loss of earning power without focusing on the physical limitations responsible for the loss of earning potential. *What constitutes proof of impairment would necessarily vary greatly from evidence of disability.*

*Diehl*, 5 A.3d at 244 (emphasis added). Thus, the Supreme Court reasoned that "[b]ecause the definition of impairment does not contemplate or encompass earning power, logic dictates that the evidence required to establish impairment [under 306(a.3)(8)(i)] would be different from that required by Section 306(b) [of the WC Act, 77 P.S. § 512(2) (defining '[e]arning power')]." *Id.* at 244-45.

The Supreme Court observed further:

The purpose of an IRE is to establish a claimant's degree of impairment, not to determine the claimant's earning power. Indeed, the Legislature did not so much as mention earning power in Section [306(a.3)]. The Legislature also highlighted the distinction between impairment status and earning power in subsection (3), which provides that the amount of compensation does not change when a claimant's status is changed to partial disability. According to subsection (3), even though the amount of compensation is unaffected by the change in disability status, "[a]n insurer or employe may, at any time prior to or during the [500]-week period of partial disability, show that the employe's earning power has changed." 77 P.S. § 511.2(3). *This language demonstrates unambiguously that the Legislature contemplated that earning power and impairment status would involve different determinations.*

*Diehl*, 5 A.3d at 245 (emphasis added).

In *Diehl*, the issue was whether the employer was required to present evidence of earning power as well as an IRE in order to seek reduction of a claimant's disability status from total to partial disability. The Court held such evidence was not required. *Diehl*, 5 A.3d at 246. This Court concludes that the same analysis applied by the *Diehl* Court likewise leads to the conclusion that Employer

12

could not rebut Claimant's impairment rating under Section 306(a.3) by offering evidence of Claimant's earning power. *See Whitfield*, 188 A.3d at 613 (addition of the IRE process to the WC Act "provided another method of changing a claimant's disability status from total to partial disability . . . , without regard to any change in a claimant's earning power") (emphasis omitted). Therefore, the WCJ properly declined such evidence.

### C. Retroactive Application of *Protz II*

Employer asserts that "*Protz II* was decided on [June 20, 2017] and the relief granted [to Claimant here] was effective as of [September 1, 2016]. Accordingly, there was a retroactive application of *Protz II* in terms of the relief afforded to [] Claimant. . . ." Br. of Pet'r at 11. We reject Employer's argument.

Employer acknowledges the WCJ's conclusion that this Court in *Whitfield* rejected a similar retroactivity argument concerning *Protz II*. Br. of Pet'r at 11. As we explained in *Whitfield*,

> [s]imply because *Protz II* is being applied to a case that arose from a work injury and a change in disability status that predates it does not mean it operates retroactively. . . . This decision does not alter [the c]laimant's past status. Rather, it gives effect to the [c]laimant's status as it existed at the time she filed her reinstatement petition, which was filed within the statutory timeframe for filing such petitions.

*Whitfield*, 188 A.3d at 617.

The same reasoning applies here. As this Court determined in *Whitfield*, we conclude that Claimant here filed his Modification Petition within the statutory time limit. Applying the holding of *Protz II* is not impermissibly retroactive.

13

## IV. Conclusion

Based on the foregoing analysis, and consistent with the reasoning of *Whitfield*, we affirm the Board's decision.[9]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[9] In *Whitfield*, this Court also explained that "to be entitled to reinstatement, a claimant must testify that her work-related injury continues, and the WCJ must credit that testimony over any evidence that an employer presents to the contrary." 188 A.3d at 617. The claimant in *Whitfield* testified she was still disabled, but the WCJ failed to make a related credibility finding; accordingly, this Court remanded the matter for the requisite finding. *Id.* Here, however, the WCJ expressly found Claimant's assertion of continuing disability to be credible, observing that Claimant testified credibly before the WCJ multiple times and that continuing disability was credibly supported by Claimant's medical expert and even acknowledged by Employer's medical expert. C.R. Item #7 (WCJ Op. & Order 5/24/19) at 5-6, Finding of Fact No. 16. The WCJ also reached a related conclusion that Claimant showed his work-related disability continued, and Employer failed to prove otherwise. *Id.* at 6, Conclusion of Law No. 3. Consequently, unlike in *Whitfield*, no remand is necessary in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Allegheny and UPMC      :
Benefit Management Services, Inc.,      :
               Petitioners      :
     :
         v.      :
     :
Workers' Compensation Appeal      :
Board (Butkus),      :     No. 486 C.D. 2020
             Respondent      :

## O R D E R

AND NOW, this 29th day of April, 2021, the order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge