### ARVILLA OILFIELD SERVICES, INC. and State Workers' Insurance Fund, Petitioners

v.

### WORKERS' COMPENSATION APPEAL BOARD (CARLSON), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 21, 2014.

Decided May 20, 2014.

---

Joseph P. Vendetti, Erie, for petitioners.

Matthew J. Parini, Erie, for respondent.

BEFORE: PELLEGRINI, President Judge, and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

Arvilla Oilfield Services, Inc. (Employer) and the State Workers' Insurance Fund petition for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying Employer's modification petition. Employer sought to modify the disability status of Paul Carlson (Claimant) from total to partial because Claimant had a total body impairment rating of less than 50 percent. The Board set aside the impairment rating evaluation (IRE) because the Workers' Compensation Judge (WCJ) found that Claimant had not yet reached maximum medical improvement when the IRE was done. Concluding that the WCJ's finding is not supported by substantial and competent evidence, we vacate and remand for further findings.

Claimant worked for Employer as an oil field operator. On July 20, 2004, Claimant was injured when he was struck by heavy tubing. Employer issued a Notice of Compensation Payable (NCP) accepting the work injury as a "labral tear" of the right hip as well as strains and contusions to the low back and right shoulder. The NCP also accepted liability for payment of total disability benefits. Reproduced Record at 2a (R.R. ___).

In December 2004, Claimant underwent arthroscopic surgery on his right hip. This was followed by a total hip replacement in October 2005. Claimant filed a claim petition seeking payment of medical bills associated with these surgeries, which the WCJ granted in March 2007. The WCJ concluded that although Claimant had pre-existing degenerative disease in his right hip, the surgeries were necessitated by Claimant's work injury.

In December 2009, Employer filed a modification petition, alleging that Claimant had fully recovered from the work injuries to his low back and right shoulder. However, Employer stipulated that Claimant had not fully recovered from his hip injury. Presumably, this is why Employer filed a modification rather than a termination petition. The petition was assigned to a WCJ.[1]

At the hearing, Claimant testified that his hip surgeries did not resolve all of his symptoms. Claimant's hip pain requires that he walk with a cane. Muscle tightness between Claimant's hip and back also causes pain, although the pain has been relieved somewhat by an electrical stimulator implanted in his back. He explained that Dominic M. Sciamanda, D.O., treats Claimant's muscle tightness by manipulation and prescribes pain medications.

Dr. Sciamanda, who is board certified, *inter alia*, in neuromusculoskeletal medicine and osteopathic manipulative medicine, testified by deposition. Dr. Sciamanda began treating Claimant on July 14, 2008, for pain in his right hip and low back. Dr. Sciamanda diagnosed Claimant with lumbar degenerative disc disease also known as lumbosacral spondylosis; chronic pain; low back spasm; and multiple nonallopathic lesions from the head to the pelvis. Dr. Sciamanda opined that Claimant's abnormal gait after the work injury caused his pre-existing degenerative back condition to become symptomatic. Because Dr. Sciamanda had not seen Claimant before his work injury and, thus, did not know whether he suffered back pain before his injury, he could "only assume that" Claimant's work injury caused his ongoing pain.

---

1. Employer also filed a petition to modify Claimant's benefits based on potential earnings from three jobs that were referred to him by a vocational expert that Claimant did not pursue in good faith. The WCJ denied the modification, finding that the jobs were beyond Claimant's capabilities. Because job availability is not at issue on appeal, we do not discuss this aspect of the case.

R.R. 45a. Dr. Sciamanda attributed some of Claimant's back pain to his hip problems. Noting that Claimant had been diagnosed with lumbar radiculopathy, Dr. Sciamanda also attributed that condition to the work injury.

Dr. Sciamanda explained that the goal of his treatment is to reduce Claimant's pain and to increase his mobility, range of motion and functionality. When asked whether he believes Claimant is making progress toward this goal, Dr. Sciamanda responded as follows:

It would appear so. He certainly has setbacks at times where we have to kind of backtrack and move forward. Again, however, overall he seems to be making progress.

R.R. 46a–47a. Dr. Sciamanda testified that he had not released Claimant to perform any type of work, even sedentary.

Based on Dr. Sciamanda's deposition, Claimant filed a petition to review compensation benefits to add lumbar radiculopathy and lumbar spondylosis to the NCP. The petition also alleged that Claimant's condition has worsened since the WCJ rendered his decision in 2007.

Employer offered the deposition testimony of Jon Alexander Levy, M.D., a board certified orthopedic surgeon who performed an independent medical examination (IME) of Claimant on October 14, 2009. Dr. Levy took a history from Claimant, reviewed his medical records and performed a physical examination. Dr. Levy noted that Claimant had a history of pre-existing lumbar degenerative disc disease with significant pain complaints that had led Claimant to seek medical treatment

two months before his work injury. Lumbar spine MRIs performed in July 2004 and August 2006, both post-injury, showed no acute injury, only the pre-existing degenerative changes that were not affected by the work injury. Dr. Levy opined that Claimant was fully recovered from his work-related right shoulder strain and low back strain. He opined that any ongoing back complaints were due to Claimant's pre-existing disc degeneration. In his IME report, Dr. Levy opined that Claimant's hip injury had reached maximum medical improvement.[2]

Before Employer's modification petition was decided, it requested that Claimant undergo an IRE in accordance with Section 306(a.2) of the Workers' Compensation Act[3] (Act). The Department of Labor and Industry assigned Jeffrey M. Moldovan, D.O., to perform the IRE, which took place on June 3, 2010. Dr. Moldovan opined that Claimant had a ten percent impairment rating caused by the work injury. On the basis of this opinion, Employer filed a second modification petition to modify Claimant's disability status from total to partial. This petition was consolidated with the pending petitions.

In support of its IRE modification petition, Employer submitted Dr. Moldovan's IRE report and his deposition testimony. Dr. Moldovan is board certified in family medicine and emergency medicine and is on the Department's list of approved physicians certified to perform IREs. When Dr. Moldovan saw Claimant on June 3, 2010, Claimant walked with an altered gait and used a cane. A physical examination revealed discomfort and some limitations

---

**2.** This opinion was offered for purposes of Claimant's work injury to his hip. The record does not show whether this opinion was conducted under the American Medical Association Guides to the Evaluation of Permanent Impairment.

**3.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 511.2. Section 306(a.2) was added by the Act of June 24, 1996, P.L. 350.

with the right hip. Using the sixth edition of the American Medical Association Guides to the Evaluation of Permanent Impairment, which was the most recent edition, Dr. Moldovan assigned a 25 percent impairment to Claimant's hip and lower extremity. Claimant told Dr. Moldovan that he was not experiencing any symptoms in his right shoulder or low back, and the physical examination of those areas was normal. Dr. Moldovan assigned a zero percent impairment to Claimant's right shoulder and low back. Together, the 25 percent impairment rating for Claimant's hip and lower extremity and the zero percent impairment rating for his right shoulder and low back resulted in a ten percent whole person permanent impairment attributable to the work injury. Dr. Moldovan testified that at the time he performed the IRE, Claimant had reached maximum medical improvement, also known as MMI. Dr. Moldovan explained:

> The MMI basically is this, sir, that he's as good as he's going to get based upon the current surgical and medical treatment available to him. However, what MMI does allow for is ongoing progression due to either aging process or passage of time, so [Claimant] may have ongoing symptoms. And, in fact, he may at some point deteriorate and require different intervention, but at the time I saw him he was truly at maximum medical improvement.

R.R. 329a.

Claimant cross-examined Dr. Moldovan at his deposition. However, Claimant presented no evidence in opposition to Dr. Moldovan's IRE report or deposition.

Crediting Dr. Levy's opinion, the WCJ found that Employer proved that Claimant had fully recovered from his right shoulder injury and granted Employer's modification petition with respect to that injury. However, the WCJ rejected Dr. Levy's opinion that Claimant had fully recovered from his low back strain, noting that Dr. Levy did not address the effect Claimant's hip injury and altered gait would have on his work-related back strain. Because the WCJ found that Claimant was not fully recovered from his back strain, she denied Employer's modification petition with respect to that injury.

On the other hand, the WCJ rejected Dr. Sciamanda's opinion that Claimant's work-related back injury included lumbar radiculopathy and lumbar spondylosis. Accordingly, the WCJ denied Claimant's review petition seeking to expand the NCP's description of the work injury. The WCJ held that the

> accepted work injuries remain right shoulder strain and contusions [from which he fully recovered], low back strain and contusions, and right hip strain with labral tear with surgeries, including right hip replacement.

WCJ Decision, October 4, 2011, at 7; Order ¶ 1.

Finally, the WCJ rejected Dr. Moldovan's opinion that Claimant had reached maximum medical improvement. The WCJ relied upon the testimony of Dr. Sciamanda and Claimant to conclude otherwise. Specifically, the WCJ found that:

> [T]he testimony of Dr. Moldovan is not found credible regarding the IRE because his opinion that the Claimant has reached maximum medical improvement is not found to be credible. According to Dr. Sciamanda's testimony, the Claimant is continuing to make progress and he continues to have setbacks, at times. Dr. Moldovan's opinion that the Claimant is at maximum medical improvement because [he] is "as good as he is going to get" is not supported by the treatment records.

WCJ Decision, October 4, 2011, at 5; Finding of Fact No. 19.[4] Accordingly, the WCJ denied Employer's modification on the basis of a whole body impairment rating of 25 percent.

Employer appealed. The Board affirmed the WCJ's finding that Claimant's condition is not static and, therefore, he has not reached maximum medical improvement. Employer then petitioned for this Court's review.[5]

Employer's appeal is limited to the denial of its IRE modification petition. Employer argues that substantial evidence does not support the WCJ's finding that Claimant had not reached maximum medical improvement as of the IRE that took place on June 3, 2010. Employer contends that it is entitled to modify Claimant's benefit status from total to partial because the WCJ capriciously disregarded the only competent medical evidence of record on whether Claimant had reached maximum

medical improvement for purposes of an IRE, *i.e.*, the opinion of Dr. Moldovan.

■ Section 306(a.2)(1) of the Act provides for an IRE in order to determine a claimant's "degree of impairment due to the compensable injury." 77 P.S. § 511.2(1).[6] If the IRE results in an "impairment rating" of less than 50 percent, the employer can petition to have a WCJ modify the claimant's benefit status from total to partial. 77 P.S. § 511.2(2); *Diehl v. Workers' Compensation Appeal Board (I.A. Construction)*, 607 Pa. 254, 5 A.3d 230, 244 (2010).[7] In that event, "the IRE becomes an item of evidence just as would the results of any medical examination." *Id.* at 245. "[T]he WCJ must make appropriate credibility findings related to the IRE and the performing physician. The claimant, obviously, may introduce his own evidence regarding his degree of impairment to rebut the IRE findings." *Id.* "The

---

**4.** The WCJ did not identify the "treatment records;" it is assumed that these records relate to Dr. Sciamanda's treatment.

**5.** This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *City of Philadelphia v. Workers' Compensation Appeal Board (Brown)*, 830 A.2d 649, 653 n. 2 (Pa.Cmwlth.2003). Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a finding. *Mrs. Smith's Frozen Foods Company v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa.Cmwlth. 382, 539 A.2d 11, 14 (1988).

**6.** Section 306(a.2)(1) states as follows:

When an employe has received total disability compensation pursuant to clause (a) for a period of one hundred four weeks, unless otherwise agreed to, the employe shall be required to submit to a medical examination which shall be requested by the insurer within sixty days upon the expiration of the

one hundred four weeks to determine the degree of impairment due to the compensable injury, if any. The degree of impairment shall be determined based upon an evaluation by a physician who is licensed in this Commonwealth, who is certified by an American Board of Medical Specialties approved board or its osteopathic equivalent and who is active in clinical practice for at least twenty hours per week, chosen by agreement of the parties, or as designated by the department, pursuant to the most recent edition of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

77 P.S. § 511.2(1).

"Impairment" is defined in Section 306(a.2)(8)(i) as "an anatomic or functional abnormality or loss that results from the compensable injury and is reasonably presumed to be permanent." 77 P.S. § 511.2(8)(i).

**7.** That is so in cases such as this one where the IRE was requested outside the established window that would have made the IRE self-executing, meaning that the employer could unilaterally change the claimant's disability status without seeking a WCJ's permission.

results of the IRE, if found credible by a WCJ, may be sufficient evidence to support a change in the claimant's disability status." *Id.* at 246.

█ Section 306(a.2)(1) of the Act requires the physician doing an IRE to conform his examination "to the most recent edition of the American Medical Association 'Guides to the Evaluation of Permanent Impairment.'" 77 P.S. § 511.2(1). The AMA Guides require the physician to determine that the claimant has reached maximum medical improvement prior to establishing the impairment rating. Therefore, if the physician does not establish that the claimant is at maximum medical improvement, the impairment rating is not valid. *Combine v. Workers' Compensation Appeal Board (National Fuel Gas Distribution Corporation)*, 954 A.2d 776, 781 (Pa.Cmwlth.2008).

█ Employer argues that the WCJ's factual finding that Claimant had not reached maximum medical improvement at the time of the IRE is not supported by substantial evidence. The WCJ relied upon one phrase used by Dr. Sciamanda that was taken out of context and was, in any event, speculative. Simply, Dr. Sciamanda did not opine about whether Claimant had reached maximum medical improvement when the IRE was done. Indeed, he could not have so opined because he last saw Claimant months before the IRE was done. Dr. Sciamanda's deposition was taken in defense of Employer's other modification petition and to support Claimant's effort to expand his accepted work injuries in the NCP to include additional lower back conditions.

Claimant rejoins that the WCJ's factual finding that Claimant had not reached maximum medical improvement was based on a credibility determination beyond this Court's power to reverse. Claimant also argues that Dr. Sciamanda's testimony supports the WCJ's finding that Claimant has not yet reached maximum medical improvement.

█ As fact finder, the WCJ makes credibility determinations, resolves conflicts in the medical evidence and decides what weight to assign the evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa.Cmwlth.1995). An appellate court considers whether the factual findings have the requisite measure of support in the record as a whole. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434, 436–37 (1992). A WCJ may reject even uncontroverted evidence presented by the party with the burden of proof, but he must make a specific finding and articulate a reasonable explanation for doing so. *Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Annette Pilvalis)*, 142 Pa.Cmwlth. 400, 597 A.2d 294, 296–97 (1991).[8] This is to ensure

---

8. This requirement is found in Section 422(a) of the Act, which provides, in relevant part, as follows:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The [WCJ] shall specify the evidence upon which the [WCJ] relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the [WCJ] must adequately explain the reasons for rejecting or discrediting competent evidence. *Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection.* The adjudication shall provide the basis for meaningful appellate review.

77 P.S. § 834 (emphasis added).

that "a legally erroneous basis for a finding will not lie undiscovered" but, rather, "will be evident and can be corrected on appeal." *PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchison)*, 717 A.2d 1086, 1088–89 (Pa. Cmwlth.1998).

In this case, the WCJ rejected Dr. Moldovan's opinion in favor of Dr. Sciamanda's testimony. However, Dr. Sciamanda did not testify on the issue of maximum medical improvement. Further, it cannot be inferred from Dr. Sciamanda's deposition that Claimant had not reached maximum medical improvement on the day Dr. Moldovan examined him.[9]

■ "Maximum medical improvement" means that the claimant's condition has become "static or stable." *Combine*, 954 A.2d at 781. The sixth edition of the AMA Guides, which was the edition used by Dr. Moldovan here, describes the term "maximum medical improvement" as follows:

Maximum Medical Improvement refers to a status where patients are as good as they are going to be from the medical and surgical treatment available to them. It can also be conceptualized as a date from which further recovery or deterioration is not anticipated, although over time (beyond 12 months) there may be some expected change....

Thus, MMI represents a point in time in the recovery process after an injury when further formal medical or surgical intervention cannot be expected to improve the underlying impairment.

Therefore, *MMI is not predicated on the elimination of symptoms* and/or subjective complaints. Also, *MMI can be determined if recovery has reached the stage where symptoms* can be expected to remain stable with the passage of time, or *can be managed with palliative measures that do not alter the underlying impairment substantially*, within medical probability.

*Id.* at 779 (emphasis added). Maximum medical improvement is not the same as full recovery. There are several reasons why Dr. Sciamanda's testimony does not support the WCJ's factual finding that Claimant had not reached maximum medical improvement.

First, Dr. Sciamanda was neither asked to render nor specifically offered his opinion on Claimant's maximum medical improvement as defined in the AMA Guides. Dr. Sciamanda stated that Claimant generally "seems to be making progress" with his treatment goals although he "certainly has setbacks at times." R.R. 46a–47a. This opinion may support a finding that Claimant was not fully recovered, but that is not the inquiry in an IRE.

Second, Dr. Sciamanda last saw Claimant in February 2010 and gave his deposition on March 4, 2010, three months before Dr. Moldovan's IRE on June 3, 2010. The claimant's condition at the time of the IRE is critical. *Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Pickford)*, 29 A.3d 120, 128 (Pa. Cmwlth.2011), *petition for allowance of*

---

9. There is no way to glean a competent opinion on Claimant's maximum medical improvement from Dr. Sciamanda's testimony, as the dissent attempts. First, "maximum medical improvement" is a term of art. The legislature, not the majority, has mandated that an opinion on maximum medical improvement be governed by the AMA Guides. Second, the dissent ignores the fact that Dr. Sciamanda was treating Claimant for back conditions that were *not related to* Claimant's work injury. Claimant's full body impairment rating must be based on his work injury, not other conditions that may affect him. The impairment rating recognizes that a claimant may not be fully recovered. Under the Act, if a claimant's work injury results in a full body impairment of less than 50%, then his status changes to partial disability even though his compensation benefits do not change.

*appeal denied,* 615 Pa. 781, 42 A.3d 295 (2012). Dr. Sciamanda's March 2010 testimony cannot support a finding that Claimant had not reached maximum medical improvement on June 3, 2010.

Third, Dr. Sciamanda's testimony reveals that he provides Claimant with palliative care. Palliative care targets the claimant's pain and functional level and is "designed to manage the claimant's symptoms rather than to cure or permanently improve the underlying condition." *Jackson v. Workers' Compensation Appeal Board (Boeing),* 825 A.2d 766, 771 (Pa. Cmwlth.2003). Dr. Sciamanda treats Claimant with osteopathic manipulation and medication to reduce Claimant's back pain and to increase his mobility, range of motion and functionality. R.R. 46a. Dr. Sciamanda made no mention of curing Claimant or permanently improving his underlying condition.

The AMA Guides specifically state that maximum medical improvement *"can be determined if recovery has reached the stage where symptoms ... can be managed with palliative measures that do not alter the underlying impairment substantially ...." Combine,* 954 A.2d at 779 (emphasis added). Simply stated, having good days and bad days does not mean that Claimant has not reached maximum medical improvement. On the contrary, treatment for pain that includes "progress" and "setbacks" is wholly compatible with the AMA Guides' description of maximum medical improvement, not contrary to it.

Finally, although not least of all, Dr. Sciamanda was treating Claimant for lumbar radiculopathy and spondylosis, which the WCJ specifically found not to be work-related and refused to add to the NCP. Section 306(a.2)(1) of the Act provides for an IRE in order to determine a claimant's "degree of impairment due to the compensable injury." 77 P.S. § 511.2(1). Section 306(a.2)(8)(ii) of the Act specifically defines an impairment rating as:

> [T]he percentage of permanent impairment of the whole body *resulting from the compensable injury.* The percentage rating for impairment under this clause shall represent only that impairment that is the result of the compensable injury and *not for any* preexisting work-related or *nonwork-related impairment.*

77 P.S. § 511.2(8)(ii) (emphasis added). Only the impairment "resulting from the compensable injury" is to be considered, while "nonwork-related impairment" is irrelevant and must not be included in the impairment rating. Necessarily, maximum medical improvement applies only to the compensable work injury for purposes of the IRE. Because Dr. Sciamanda was treating Claimant for back conditions that were not part of his compensable injury, his testimony does not support a finding that Claimant had not reached maximum medical improvement with respect to his compensable work injury, *i.e.,* his back strain.

By contrast, Dr. Moldovan performed the IRE according to the AMA Guides, taking into account the shoulder, back and hip injuries described in the NCP and the 2007 WCJ decision. Dr. Moldovan unequivocally testified that at the time of the IRE, Claimant "may have ongoing symptoms" but "was truly at maximum medical improvement" because "he's as good as he's going to get based upon the current surgical and medical treatment available to him." R.R. 329a. This testimony is compatible with the AMA Guides' description of the term maximum medical improvement. *See Combine,* 954 A.2d at 779.

The WCJ erred in relying on Dr. Sciamanda's testimony for the reasons discussed above. Employer presented the only competent evidence of maximum med-

ical improvement.[10] The WCJ is permitted to reject uncontroverted evidence. However, if the WCJ chooses to do so, she must comply with the following requirement in Section 422(a) of the Act:

Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the [WCJ] must identify that evidence and explain adequately the reasons for its rejection.

77 P.S. § 834.

In accordance with the Act, we remand for further findings on this critical issue. The WCJ must make a credibility determination based solely on Dr. Moldovan's deposition testimony and IRE report. If the WCJ chooses to reject this uncontroverted evidence, the WCJ must "adequately explain the reasons for its rejection" and cannot reject it "for no reason or for an irrational reason." 77 P.S. § 834. Further, the WCJ's reason must pertain to impairment, not to Claimant's disability or his lack of full recovery because they are irrelevant in an IRE proceeding.

Because the WCJ concluded that Dr. Moldovan's testimony did not satisfy the threshold burden of establishing that Claimant was at maximum medical improvement, the WCJ did not make any findings about the merits of Dr. Moldovan's report and testimony. Should the WCJ credit Dr. Moldovan's opinion of maximum medical improvement, the WCJ then must make critical findings on whether Dr. Moldovan's report and testimony support a total body impairment of less than 50 percent.

Accordingly, the order of the Board is vacated to the extent it affirmed the WCJ's denial of Employer's IRE modification petition. The matter is remanded to the Board with instructions to remand to the WCJ to render necessary findings of fact and conclusions of law regarding Dr. Moldovan's impairment rating.

## ORDER

AND NOW, this 20th day of May, 2014, the order of the Workers' Compensation Appeal Board dated August 14, 2013, in the above captioned matter is hereby VACATED inasmuch as it affirmed the Workers' Compensation Judge's denial of the petition to modify benefit status from total to partial based on the results of the impairment rating evaluation and AFFIRMED in all other respects. The matter is REMANDED for purposes consistent with the foregoing opinion.

Jurisdiction relinquished.

DISSENTING OPINION BY President Judge PELLEGRINI.

Because the majority is making credibility determinations and reweighing the evidence to find that Claimant has reached a maximum level of improvement to change his disability from total to partial, I respectfully dissent.

In December 2004, Claimant underwent arthroscopic surgery on his right hip, followed by a total hip replacement in October 2005. In December 2009, Employer filed a modification petition, alleging that Claimant had fully recovered from the work injuries to his low back and right shoulder, but had stipulated that Claimant had not fully recovered from his hip injury.

In support of its modification petition to modify Claimant's disability status from total to partial, Employer offered the deposition testimony of Jon Alexander Levy, M.D. (Dr. Levy), a board certified orthope-

---

**10.** We note that Dr. Levy's opinion that Claimant reached maximum medical improvement as early as October 2009, although rendered during an IME, supports Dr. Moldovan's opinion.

dic surgeon, who opined that Claimant was fully recovered from his work-related right shoulder strain and low back strain, and that any ongoing back complaints were due to Claimant's pre-existing disc degeneration. Dr. Levy also opined that Claimant had reached maximum medical improvement.

Dr. Dominic M. Sciamanda, D.O. (Dr. Sciamanda), who is board certified, *inter alia*, in neuromusculoskeletal medicine and osteopathic manipulative medicine, testified that he began treating Claimant on July 14, 2008, for pain in his right hip and low back. Dr. Sciamanda diagnosed Claimant with lumbar degenerative disc disease but also opined that the work injury caused his pre-existing degenerative back condition to become symptomatic. He also testified that he had not released Claimant to perform any type of work, even sedentary work.

After all the testimony had been taken regarding Employer's modification petition but before it was decided, Employer requested that Claimant undergo an impairment rating evaluation (IRE) in accordance with Section 306(a.2) of the Workers' Compensation Act (Act)[1] and Jeffrey M. Moldovan, D.O. (Dr. Moldovan) was assigned to perform the IRE. After an examination, Dr. Moldovan opined that Claimant had a ten percent impairment rating of the whole person caused by the work injury. The request for the IRE was outside of the 60–day window set forth in Section 306(a.2)(1) of the Act, 77 P.S. § 511.2(1), after 104 weeks of compensation where if a claimant's impairment rating is less than 50 percent, then the change in disability from total to partial status is automatic and the burden is on the claimant to appeal.[2]

After Employer's second modification petition to modify Claimant's disability status from total to partial was consolidated with the pending petition, Dr. Moldovan testified that he assigned a zero percent impairment to Claimant's right shoulder and low back strain, a rating of 25 percent impairment for his hip and a zero percent impairment to the shoulder and low back, which resulted in a ten percent whole person permanent impairment attributable to the work injury, and that Claimant had reached maximum medical improvement.

The WCJ denied the request to modify benefits from total to partial. Regarding

---

**1.** Act of June 2, 1915, P.L. 736, added by the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2. Section 306(a.2) provides an alternate means of changing a claimant's disability status. Under that provision, once a claimant has received 104 weeks of total disability benefits, the employer may request an IRE within 60 days of the expiration of the 104 weeks. If the impairment review indicates that the claimant's impairment rating is less than 50 percent, then the claimant's disability status automatically changes from total to partial disability.

**2.** As the Supreme Court has explained:

If, however, the employer requests the IRE outside of the 60–day window and claims that the claimant's impairment rating is less than 50 percent, the IRE merely serves as evidence that the employer may use at a hearing before a WCJ on the employer's modification petition to establish that the claimant's disability status should be changed from total to partial. In that event, the IRE becomes an item of evidence just as would the results of any medical examination the claimant submitted to at the request of his employer. It is entitled to no more or less weight than the results of any other examination. The physician who performed the IRE is subject to cross-examination, and the WCJ must make appropriate credibility findings related to the IRE and the performing physician. The claimant, obviously, may introduce his own evidence regarding his degree of impairment to rebut the IRE findings.

*Diehl v. Workers' Compensation Appeal Board (I.A. Construction)*, 607 Pa. 254, 5 A.3d 230, 245 (2010).

the determinations at issue here, the WCJ credited Dr. Levy's opinion that Employer proved that Claimant had fully recovered from his right shoulder injury and granted Employer's petition for that injury, but rejected his opinion that Claimant had fully recovered from his low back strain because he did not address the effect that Claimant's hip injury would have on his work-related back strain. Because the WCJ found that Claimant was not fully recovered from his back strain, she denied Employer's modification petition with respect to that injury.

The WCJ rejected Dr. Moldovan's opinion, first making a general credibility finding that the "testimony of Dr. Moldovan is not found credible regarding the IRE because his opinion that the Claimant has reached the maximum medical improvement is not found to be credible." The WCJ then goes on to state that he accepted Dr. Sciamanda's testimony that Claimant is continuing to make progress but continues to have setbacks at times, and that Dr. Moldovan's opinion that [he] is "as good as he is going to get" is not supported by the treatment records. Based on those determinations, the WCJ denied the modification from total to partial disability based on Dr. Moldovan's IRE.

The majority reverses because the WCJ improperly found Dr. Moldovan not credible and Dr. Sciamanda's testimony credible because Dr. Sciamanda did not testify on the issue of maximum medical improvement. The majority then goes into a detailed examination of why it would have found Dr. Sciamanda's testimony not credible for the purposes of whether Claimant had reached the maximum level of medical improvement mainly because Dr. Sciamanda did not directly address the maximum level of improvement, which is not surprising, given that his testimony was taken before this became an issue.

I disagree with the majority's remand to the WCJ to make a credibility determination "based solely on Dr. Moldovan's deposition testimony and IRE report . . . [as it] pertains to impairment, not to Claimant's disability or his lack of full recovery because they are irrelevant to an IRE proceeding" and apparently without taking into consideration Dr. Sciamanda's testimony concerning Claimant's condition. The majority arrives at that position because Dr. Sciamanda never used the AMA Guides in arriving at his opinion that Claimant had not reached his maximum level of medical improvement. That is not surprising because Employer did not request the IRE under Section 306(a.2) of the Act until after Dr. Sciamanda testified.

Under the majority's view, just because a medical witness who testified that a claimant was disabled for all purposes did not address the AMA Guides in determining a level of medical impairment, that testimony cannot be used by the WCJ to make credibility determinations about whether another medical expert who used the AMA Guides and found that the claimant was only 10% impaired. What the majority ignores is that both doctors made observations about Claimant's condition and that the testimony does not become irrelevant as to whether a doctor was credible or not just because the opinion was not converted to a mathematical percentage.

Even if we ignore Dr. Sciamanda's medical examination and improperly find that Dr. Moldovan's testimony was uncontroverted, the WCJ also found Dr. Moldovan's opinion that Claimant had reached his maximum level of improvement was not supported by the treatment records. That finding alone is sufficient to explain why the WCJ found Dr. Moldovan's pur-

portedly uncontroverted testimony not credible.

Accordingly, because the WCJ gave legally sufficient reasons as to why he found Dr. Moldovan's testimony not credible, I respectfully dissent and would affirm the Board.