IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maria Benjamin,                    :
              Petitioner           :
                                   :
       v.                          :    No. 2611 C.D. 2015
                                   :    Submitted: August 5, 2016
Workers' Compensation Appeal       :
Board (Omnova Solutions, Inc.),    :
              Respondent           :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: October 6, 2016

       Maria Benjamin (Claimant) petitions for review of an adjudication of
the Workers' Compensation Appeal Board (Board), which affirmed the Workers'
Compensation Judge's (WCJ) decision denying Claimant's claim petition.[1]
Discerning no merit to Claimant's argument that the WCJ capriciously disregarded
evidence, we affirm.

       Claimant worked in the shipping and receiving department for
Omnova Solutions, Inc. (Employer).  On December 4, 2013, Claimant was driving
a stand-up forklift when she hit a stationary fork truck.  Claimant reported the
accident to her safety coordinator, and an accident report was filed two days later.
Claimant continued to work as scheduled until December 12, 2013, when she was
discharged.

---

[1] The Board also affirmed the denial and dismissal of a penalty petition filed by Claimant.  The
penalty petition is not at issue in this appeal.

On January 13, 2014, Claimant filed a claim petition alleging that she was suffering from lower back pain and a burning pain radiating down her right leg as a result of the forklift collision. She sought total disability benefits as of December 4, 2013, and ongoing. Additionally, she claimed that her discharge was without cause and in retaliation for the accident. Employer filed an answer to the claim petition denying all material allegations. The matter was assigned to a WCJ. Both Claimant and Employer presented evidence.

Claimant offered the following account of the accident:

> I was taking a skid back over to the other side of the warehouse. And I was coming back out, and I stopped on the floor, and I was talking to an employee. And I was talking on to the right on my side, and I was in the middle of an aisle. One of our bosses was coming up the other side of the aisle, the way it was, where I was parked in the middle. And I went to pull out. I didn't know whether there was a fork truck in front of me that stopped. I never heard a horn beep. And when I pulled out, the side of the rigger caught on to the other side of the fork truck, and I bumped into it.

Notes of Testimony (N.T.), 11/11/2014, at 9; Reproduced Record at 17a (R.R. ___). Claimant testified that a few days after the forklift accident she began experiencing an aching pain in her lower back and a burning pain radiating down her right leg. Claimant did not report these symptoms to anyone at work. Claimant stated that the pain is still present and ongoing.

Claimant presented the medical testimony of Dr. Gene Levinstein, a board-certified physiatrist. Dr. Levinstein testified that at his first meeting with Claimant on December 20, 2013, he performed a physical examination and asked her to relay her medical history. Dr. Levinstein originally diagnosed Claimant with (1) low back pain, (2) lumbar sprain/strain, (3) sacroiliac joint sprain and

2

strain, and (4) sacroilitis as a result of the December 4, 2013, forklift accident. Dr. Levinstein recommended physical therapy, prescribed pain medication, and ordered an MRI. At a subsequent visit on May 12, 2014, Dr. Levinstein met with Claimant and reviewed her MRI results. Consequently, he added aggravation of lumbar degenerative disc disease and degenerative joint disease to Claimant's diagnosis. He released her to work with restrictions.

Employer presented the medical testimony of Dr. Amir Fayyazi, a board-certified orthopedic surgeon, specializing in the treatment of spinal conditions. On March 27, 2014, Dr. Fayyazi conducted an independent medical examination of Claimant. This included a review of her prior medical history, MRI results, and a physical examination. Dr. Fayyazi agreed that Claimant suffers from degenerative disc disease, but opined that the condition was preexisting, dating back to before puberty, and was "in no way related to the alleged incident that occurred on December 4, 2013." N.T., 9/24/14, at 24, 28; R.R. 226a, 230a. He further testified that he disagreed with the remainder of Dr. Levinstein's diagnoses as inconsistent with Dr. Levinstein's own examination of Claimant. Moreover, when Dr. Fayyazi was performing a physical examination of Claimant he found that the motions she performed were inconsistent with her complaints of pain. Specifically, he stated

> [t]he reason I felt that this exam was manipulated is that I've seen thousands of patient[s] … during my career … [a]nd pain is not associated with slow motion. As a matter of fact, one would think that [the] slower you go forward, the more stress there is on your back. And it's actually the opposite, that patients who hurt have a limit that they go to, but that they reach that limit in a normal fashion. They don't go slow and deliberate. That's just unheard of. And in this case [Claimant's] range of motion appeared to be very slow and deliberate. And in my experience that type of range of motion

3

is often associated with a suboptimal effort, that when the patient demonstrated that finding, they're not putting on a full effort.

*Id.* at 14-15; R.R. 216a-17a. Dr. Fayyazi concluded, based on his physical examination of Claimant, that she "was portraying [a] disability that was not there." *Id.* at 19; R.R. 221a.

Employer offered the deposition testimony of Kim Miller, the employee with whom Claimant was talking just before the accident. Miller testified that right after the accident "[Claimant] laughed and she thought it was funny because she plowed into [the fork truck driver]…." N.T., 7/21/14, at 8; R.R. 55a. When asked if Claimant had spoken to Miller about sustaining an injury as a result of the accident, Miller testified "[n]o … the only thing that she said to me was that she was concerned that she was going to lose her job because of it. She didn't at any point tell me that she had gotten hurt at all." *Id.* at 10; R.R. 57a.

Employer next offered the deposition testimony of Ken Smith, the driver of the stationary fork truck that Claimant struck. His testimony about the accident echoed that of Miller, and he further stated that he beeped his horn twice to alert Claimant of his position on the warehouse floor.

Alfred Jenesky, the third accident witness, corroborated the description of the accident offered by Miller and Smith. Specifically, when counsel asked what he observed from the accident, Jenesky stated

> [w]hen the collision occurred, [the stationary fork truck driver] yelled something. [Claimant] started to laugh. She then backed up the stand-up truck just to get the outrigger I assume off the wheel and then she started to pull forward. At that point I started yelling for her to stop … [b]ecause she just committed a serious unsafe act, accident by running into another fork truck.

4

N.T., 7/21/14, at 7; R.R. 85a. Jenesky confirmed that Smith beeped the horn of his fork truck twice prior to the accident.

Daniel Nagle, Employer's safety manager, testified that he investigated the accident. After taking written statements from those involved, he concluded that Claimant violated safety procedures by moving her standing forklift "forward without looking in any direction." R.R. 131a.

Last, Employer offered the deposition testimony of Lottie Miller, who works in human resources. Miller testified that Claimant and Employer entered into a "last chance agreement" on August 23, 2012, effective for 24 months. Miller explained that employees with a disciplinary history are offered a last chance agreement in lieu of termination. Miller explained that the agreement explicitly stated that if a safety violation occurred that would trigger a disciplinary action, Claimant would be discharged. When asked why Claimant was discharged on December 12, 2013, Miller stated that, "[Claimant] was involved in a safety incident which involved a fork truck and with that, she did not follow proper safety procedure, so we [moved] for termination." N.T., 7/21/14, at 10; R.R. 147a.

The WCJ credited the medical opinion of Dr. Fayyazi to find that Claimant did not suffer a work related injury. The WCJ also credited the testimony of Employer's fact witnesses, finding that each individual's testimony was consistent with the others. Conversely, the WCJ rejected Claimant's testimony and Dr. Levinstein's medical opinion. The WCJ discredited Dr. Levinstein's medical opinion because it was based largely on Claimant's testimony and subjective complaints, which he deemed not credible. In accordance with these findings, the WCJ dismissed Claimant's claim petition and denied benefits.

5

Claimant appealed, and the Board affirmed the WCJ's decision. Claimant then petitioned for this Court's review. [2]

On appeal, Claimant argues that the Board erred because the WCJ capriciously disregarded substantial evidence that she suffered compensable work injuries that caused an ongoing disability. She further argues that Employer terminated her employment in retaliation.

A capricious disregard of evidence occurs "when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Arena v. Packaging Systems Corp.*, 507 A.2d 18, 20 (Pa. 1986). A WCJ's express consideration and rejection of evidence does not constitute capricious disregard. *William v. Workers' Compensation Appeal Board (USX-Corp. – Fairless Works)*, 862 A.2d 137 (Pa. Cmwlth. 2004).

Here, the WCJ considered all evidence presented. In his 16 page decision, the WCJ thoroughly reviewed the evidence offered by both Claimant and Employer and explained why he did not credit the testimony of Claimant or Dr. Levinstein. In discrediting Claimant's testimony, the WCJ noted:

> Claimant testified that she suffered no pain for two days but told the doctors that she suffered immediate pain; Claimant worked her regular position during every shift from December 4, 2013, to December 12, 2013; Claimant did not tell anyone at

---

[2] This Court's review of an order of the Board is to determine whether the necessary findings of fact are supported by substantial evidence, Board procedures were violated, constitutional rights were violated or an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012). Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a finding. *Mrs. Smith's Frozen Foods Company v. Workmen's Compensation Appeal Board (Clouser)*, 539 A.2d 11, 14 (Pa. Cmwlth. 1988).

work that she had injured herself in the incident of December 4, 2013; Claimant was fired and went through an exit interview on December 12, 2013, at which time she purportedly had a pain level of 6/10 but failed to advise anyone that she was injured or in pain; Claimant had medical insurance which would have covered doctor's appointments and visits at least through December 12, 2013, although she did not seek medical attention anywhere until December 20, 2013, and then only at the direction of her attorney….

WCJ Decision, 2/23/2015, at 11; Finding of Fact No. 42. The WCJ, who was present for Claimant's deposition, based his adverse credibility determination on her demeanor. *Id.*

The WCJ also explained his reasoning for discrediting Dr. Levinstein's medical opinion. Specifically, the WCJ found:

Claimant was sent to Dr. Levinstein by her attorney; Dr. Levinstein clearly did not maintain his own file adequately in this matter; some of the visits in this case were actually with a physician's assistant and not Dr. Levinstein; Dr. Levinstein understood that there had been a significant and serious impact between the two forklifts; Dr. Levinstein understood that Claimant suffered immediate pain at the time of the incident; Dr. Levinstein discounted Claimant's delay in obtaining medical care; and Dr. Levinstein did not personally review the diagnostic films in this case.

WCJ Decision, 2/23/2015, at 12; Finding of Fact No. 49. Ultimately, the WCJ found that "Dr. Levinstein's opinions are based in large part on Claimant's subjective history and complaints, which has been rejected by this Judge, as not credible." *Id.*

7

Claimant's real concern lies with the WCJ's credibility determinations,[3] which she re-characterizes as a capricious disregard of evidence argument. We reject this strategem. Because the findings of the WCJ are supported by ample evidence in the record and fully explained, the Board correctly rejected Claimant's argument that the WCJ capriciously disregarded the evidence.

Claimant next argues that there was insufficient cause for her termination after 24 years of employment. Because the WCJ correctly determined that Claimant is not entitled to benefits, we need not address this argument.[4] Employer discharged Claimant before she reported an injury.

For the foregoing reasons, we affirm the order of the Board.

_____
MARY HANNAH LEAVITT, President Judge

---

[3] As fact finder, the WCJ makes credibility determinations, resolves conflicts in the medical evidence and decides what weight to assign the evidence. *Arvilla Oilfield Services, Inc. v. Workers' Compensation Appeal Board (Carlson)*, 91 A.3d 758, 764 (Pa. Cmwlth. 2014). An appellate court considers whether the factual findings have the requisite measure of support in the record as a whole. *Id.*

[4] In the context of workers' compensation, the issue of cause for termination is relevant in two scenarios. In the context of a claim petition, as we have here, the issue of cause for termination may be relevant to rebut claimant's proof of length of loss of earning power. *Coyne v. Workers' Compensation Appeal Board (Villanova University)*, 942 A.2d 939, 945 (Pa. Cmwlth. 2008) (citing *Vista International Hotel v. Workers' Compensation Appeal Board (Daniels)*, 742 A.2d 649, 658 (Pa. 1999)). Here, because Claimant failed to prove she suffered an injury, she did not show loss of earning power that was caused by a work injury. Accordingly, evidence of cause for termination is irrelevant. The second context where cause for termination becomes relevant is where an employer seeks to terminate or suspend benefits of a discharged employee. In such scenarios, "[e]mployer has an affirmative burden to prove either that [c]laimant's termination was voluntary, or that he was dismissed for good cause." *Vista International Hotel v. Workers' Compensation Appeal Board (Daniels)*, 683 A.2d 349, 353 (Pa. Cmwlth. 1996), *rev'd on other grounds*, 742 A.2d 649 (Pa. 1999). This inquiry is likewise irrelevant to the case at hand.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maria Benjamin,                    :
           Petitioner         :
                                :
           v.                  :     No. 2611 C.D. 2015
                                :
Workers' Compensation Appeal    :
Board (Omnova Solutions, Inc.),     :
           Respondent      :

# **O R D E R**

AND NOW, this 6th day of October, 2016, the order of the Workers' Compensation Appeal Board dated November 19, 2015, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge