# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Burger King,                               :
                                           :
                        Petitioner         :
                                           :
            v.                             :    No. 54 C.D. 2014
                                           :
Workers' Compensation Appeal               :    Submitted:  July 11, 2014
Board (Vrasic),                            :
                                           :
                        Respondent         :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**                **FILED:  September 2, 2014**

Burger King (Employer) petitions for review of an Order of the Workers'

Compensation Appeal Board (Board) which reverses, in part, the Decision of the

Workers' Compensation Judge (WCJ) granting Employer's modification petition

based on an Impairment Rating Evaluation (IRE) and modifying James Vrasic's

(Claimant) workers' compensation (WC) benefits to partial disability.[1]  On appeal,

---

[1] The Board affirmed the portion of the WCJ's Decision denying a second modification petition filed by Employer seeking a modification of Claimant's WC benefits based on an earning power assessment.  Employer is not challenging that portion of the Board's Order on appeal to this Court.

Employer argues that the Board erred by relying upon Stanish v. Workers' Compensation Appeal Board (James J. Anderson Construction Co.), 11 A.3d 569 (Pa. Cmwlth. 2010), and holding that because the IRE physician was not properly certified to perform IREs under the most recent edition of the American Medical Association Guides to Evaluation of Partial Permanent Impairment (Impairment Guide), the WCJ erred in modifying Claimant's WC benefits to partial disability. Discerning no error, we affirm.

Claimant suffered a work-related injury on November 4, 2005 and began receiving WC benefits pursuant to a Notice of Compensation Payable.[2] (WCJ Decision, Findings of Fact (FOF) ¶ 2, WCJ Decision at 1.) On October 4, 2007, Employer requested an IRE and the Bureau of Workers' Compensation (Bureau) appointed Boris Gliner, M.D., as the IRE physician. (Request for Designation of a Physician to Perform an Impairment Rating Evaluation (Request for IRE Physician), R.R. at 28a; Notice of Designation of [IRE] Physician, R.R. at 30a.) At the time of this request, the 5th Edition was the most recent edition of the Impairment Guide.

On April 29, 2008, Employer filed a second IRE request because the October 4, 2007 request had been premature. (Request for IRE Physician, R.R. at 31a.) At the time of this second IRE request, the most recent edition of the Impairment Guide was the 6th Edition, which had been published in January 2008.

---

[2] Claimant suffered a concussion, post-concussion headaches, post traumatic neck pain, and radiating right upper extremity pain "when he slipped and fell backwards, hit his head on a table, and lost consciousness." (FOF ¶ 2, WCJ Decision at 1.)

On August 21, 2008, the Bureau again appointed Dr. Gliner as the IRE physician and the IRE was completed on July 16, 2009. (Letter from Bureau to Employer (August 21, 2008), R.R. at 39a; FOF ¶ 21.) Dr. Gliner authored a report indicating that, based on his physical examination, Claimant's history, and the standards in the 6th Edition of the Impairment Guide, Claimant had a total whole person impairment rating of 30%. (July 22, 2009 IRE Examination Report, R.R. at 166a-169a.) Based on Dr. Gliner's report, Employer filed a modification petition on August 13, 2009 seeking a change in Claimant's WC benefits from total to partial disability. (WCJ Decision at 1.)

Hearings before the WCJ ensued. In support of its modification petition, Employer presented, *inter alia*, the deposition testimony of Dr. Gliner. With respect to his qualifications to perform IREs, Dr. Gliner testified that he was certified by the Bureau as an IRE physician five years ago and, at the time of his certification, the 5th Edition of the Impairment Guide was in effect. (FOF ¶ 21; Dr. Gliner's Dep. at 7, 19, R.R. at 138a, 148a.) Dr. Gliner had not been re-certified under the 6th Edition of the Impairment Guide when he performed the IRE of Claimant utilizing the 6th Edition. (Dr. Gliner's Dep. at 16-17, 19, R.R. at 146a, 149a.) The WCJ found that Dr. Gliner was appointed by the Bureau to conduct an IRE of Claimant on August 21, 2008, that the 6th Edition of the Impairment Guide became effective in January 2008, and that the doctor performed the IRE in accordance with the 6th Edition. (FOF ¶ 24.) The WCJ credited Dr. Gliner's testimony and found that he was qualified to perform the IRE. (FOF ¶ 36.) Accordingly, based on Dr. Gliner's credible testimony, the WCJ found that Claimant had reached maximum medical improvement and modified Claimant's

3

WC benefits to partial disability. (FOF ¶ 36; WCJ Decision, Conclusions of Law ¶ 1.)

Claimant appealed the WCJ's Decision to the Board. Upon review the Board determined that, because Dr. Gliner was only certified to perform IREs under the 5th Edition of the Impairment Guide and he admitted that he was not certified under the 6th Edition, he was out of compliance with the regulations requiring such certification. (Board Decision at 4.) Relying on Stanish, which the Board stated holds that an IRE physician is required to perform an IRE under the most recent edition of the Impairment Guide and that the Bureau may not permit physicians to perform IREs until they are certified under the most recent edition, the Board held that Dr. Gliner was not permitted to perform the IRE of Claimant. (Board Decision at 3-5 (citing Stanish, 11 A.3d at 575-76).) Accordingly, the Board reversed the WCJ's Decision modifying Claimant's WC benefits to partial disability based on the IRE performed by Dr. Gliner. Employer now petitions this Court for review of the Board's Order.[3]

On appeal, Employer argues that the Board erred in holding that Dr. Gliner was not qualified to perform an IRE of Claimant under the 6th Edition of the Impairment Guide. Employer argues that Dr. Gliner had the *prima facia*

---

[3] Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law occurred, whether Board procedures were violated, or whether there was a violation of constitutional rights. Furnari v. Workers' Compensation Appeal Board (Temple Inland), 90 A.3d 53, 58 n.2 (Pa. Cmwlth. 2014). "When there is a question of statutory construction, our review is plenary." Stanish, 11 A.3d at 572 n.1.

4

qualifications to perform an IRE pursuant to Section 306(a.2) of the Workers' Compensation Act[4] (Act).

Section 306(a.2) of the Act governs impairment ratings.  77 P.S. § 511.2.  As we explained in Stanish, subsections (1) and (2) of Section 306(a.2) "provide for a self-executing, automatic modification of benefits when the employer requests an IRE within sixty days after the claimant receives 104 weeks of totally disability." Stanish, 11 A.3d at 574.  Section 306(a.2)(1) provides, in pertinent part, that "[t]he degree of impairment *shall* be determined based upon an evaluation by a physician . . . pursuant to the most recent edition of the [Impairment Guide]."  77 P.S. § 511.2(1) (emphasis added).  In Stanish, we reviewed the language of Section 306(a.2)(1) of the Act and held that "the use of the term 'shall'" is mandatory and, "[c]onsistent with that provision, impairment ratings are to be determined in accordance with the most recent edition of the [Impairment Guide]."  Stanish, 11 A.3d at 575.

When, as in this case, an employer requests an IRE outside the sixty-day window, subsection 5 of Section 306(a.2) governs and the employer must seek a reduction in the claimant's disability based on an IRE through the traditional administrative process.  Diehl v. Workers' Compensation Appeal Board (I.A.

---

[4] Act of June 2, 1915, P.L. 736, as amended, added by Section 4 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 511.2.  Pursuant to Section 306(a.2)(1) of the Act, an evaluating physician must be licensed in the Commonwealth, board-certified, and be "active in clinical practice for at least twenty hours per week . . ."  77 P.S. § 511.2(1).  Employer asserts that Dr. Gliner had sufficient hours of active clinical practice to qualify, he is board-certified in internal medicine, he has daily office hours, and he has been engaged in the full-time practice of medicine for 23 years.

Construction), 5 A.3d 230, 244 (Pa. 2010); Stanish, 11 A.3d at 574. Section 306(a.2)(5) requires that:

> Total disability shall continue until it is adjudicated or agreed under clause (b) that total disability has ceased or the employe's condition improves to an impairment rating that is less than fifty per centum of the degree of impairment defined under *the most recent edition* of the American Medical Association "Guides to the Evaluation of Permanent Impairment."

77 P.S. § 511.2(5) (emphasis added). Because the language contained in Section 306(a.2)(5) mandates that the degree of impairment be defined under the most recent edition of the Impairment Guide, our holding in Stanish is also applicable to Section 306(a.2)(5). In other words, the IRE relied upon by an employer seeking a reduction in a claimant's disability from total to partial, pursuant to Section 306(a.2)(5) of the Act, must be performed under the most recent edition of the Impairment Guide.

In Stanish, the physician performing the IRE did not use the latest edition of the Impairment Guide as required by the Act; the physician used the 5th Edition. Stanish, 11 A.3d at 572. This case is different because, unlike in Stanish, the IRE physician, Dr. Gliner, did not use the 5th Edition but did use the 6th Edition in performing his evaluation. Therefore, Employer asserts that the statutory requirement that the current edition of the Impairment Guide be used by an IRE physician was met in this case. The issue here is whether the Bureau-appointed IRE physician could perform the IRE using the 6th Edition. Employer argues that the regulatory criteria found in 34 Pa. Code § 123.103(d), which governs certification of IRE physicians, is discretionary and subject to the Bureau's interpretation of how and when to apply them in a particular case. Here, Employer

argues, the Bureau's appointment of Dr. Gliner demonstrates that the Bureau approved him to perform this particular evaluation under the 6th Edition of the Impairment Guide. Employer contends that a contrary interpretation would usurp the Bureau's authority and substitute, as mandatory, certain training or certification requirements which are discretionary under the Bureau's own regulations.

The Bureau's regulation at 34 Pa. Code § 123.103(d), governing physicians performing IREs, provides, in pertinent part, as follows:

> [P]hysicians designated by the Department to perform IREs *shall meet* training and certification requirements *which may include, but are not limited to*, one or more of the following:
>
> (1) Required attendance at a Departmentally approved training course on the performance of evaluations under the AMA "Guides to the Evaluation of Permanent Impairment."
>
> (2) Certification upon passage of a Departmentally approved examination on the AMA "Guides to the Evaluation of Permanent Impairment."
>
> (3) Other requirements as approved by the Department.

34 Pa. Code § 123.103(d) (emphasis added). We agree that, pursuant to this regulation, it is within the Bureau's discretion as to what training and certification requirements an IRE physician must meet in order to be qualified to perform an IRE. The issue in this case is whether it is also within the Bureau's discretion to permit an IRE physician, who was appointed by the Bureau after the publication of the latest edition of the Impairment Guide, to perform an IRE *without first meeting* the training and certification requirements the Bureau deemed were necessary and appropriate for a physician to be qualified to perform an IRE under the most recent

7

edition. Despite Employer's arguments to the contrary, our decision in Stanish supports the holding that IRE physicians must first be trained and certified under the most recent edition of the Impairment Guide before they perform IREs.

In Stanish, the employer sought self-executing relief under Section 306(a.2)(1) of the Act to reduce a claimant's disability from total to partial pursuant to an IRE that was based on the 5th Edition of the Impairment Guide, but had been performed after the publication of the 6th Edition. Upon publication of the 6th Edition in January 2008, the Bureau sent a notice to all physicians performing IREs that they would be required to meet the requirements set forth in Section 123.103 of the Bureau's regulation by attending approved training courses on the 6th Edition and reapplying for inclusion on "the 6th Edition Bureau list of IRE physicians" by August 31, 2008. Stanish, 11 A.3d at 572. Therefore, the Bureau recognized that the IRE physicians were required to meet training and certification requirements pursuant to Section 123.103(d) before performing an IRE using the 6th Edition. There was no challenge to the Bureau's notification regarding the training and certification requirements.

The crux of the matter in Stanish was whether the Bureau's interpretation of Section 123.103, that it was permitted to allow a grace period and "accept impairment ratings calculated pursuant to either the 5th or 6th edition of the [Impairment Guide] through August 31, 2008 . . . to afford [the IRE] physicians the opportunity to take a training course on the new text and reapply for certification," was contrary to the Act. Stanish, 11 A.3d at 575. We concluded that the Bureau could not interpret its regulations in contravention of the Act and

8

permit IREs to be performed using the outdated 5th Edition of the Impairment Guide. Id. at 575-76. Accordingly, we held that the Bureau's interpretation of Section 123.103 was invalid because it was contrary to the statutory intent. Id. at 576.

In reaching this holding, we understood the concern "that an immediate cessation of the use of an earlier edition of the [Impairment Guide] upon the publication of a new edition would cause an indefinite interruption in the IRE process." Id. However, we stated further that, when the General Assembly "amended the Act to establish the IRE system . . . it was obvious that the [Impairment Guide] would change and that time might be needed *to train and/or recertify IRE physicians on any newly published edition of the [Impairment Guide]*." Id. (emphasis added). We noted that, because the IRE physician was designated approximately seven months before the IRE was scheduled, the employer "had the option to request another physician who had completed 6[th] edition training during the four month period between the issuance of the 6[th] edition and the date scheduled for the evaluation." Id.

Accordingly, our decision in Stanish supports the holding that, in order for an IRE to be performed in accordance with the most recent edition of the Impairment Guide as mandated by Section 306(a.2) of the Act, the evaluating physician must first be trained and certified, as determined by the Bureau, on any newly published edition. Any other interpretation of Section 123.103(d) of the Bureau's regulations would be invalid and contrary to the statutory intent.

9

Here, Dr. Gliner was appointed as the IRE physician by the Bureau on August 21, 2008, which was after the January 2008 publication of the 6th Edition of the Impairment Guide, and the IRE was performed on July 16, 2009. Dr. Gliner admitted that, while he was certified to perform IREs pursuant to the 5th Edition of the Impairment Guide, he was not trained or certified under the 6th Edition. (Dr. Gliner's Dep. at 19, R.R. at 148a-49a.) Therefore, the Board correctly determined that Dr. Gliner was not qualified to perform the IRE.

We recognize that Employer was placed in a difficult position. Employer had no choice regarding the IRE physician the Bureau appointed; the Bureau appointed an IRE physician on August 21, 2008 that had not been certified to use the 6th Edition. Additionally, the IRE was performed in July 2009 and Dr. Gliner was deposed in January 2010, while Stanish was not decided until December, 2010. We also recognize that, because Claimant lives in Texas, the logistics of conducting the IRE has been extremely complicated. Finally, we recognize that, unlike the employer in Stanish,[5] because the IRE in this matter was not requested under the self-executing provisions of Section 306(a.2)(1) of the Act, any subsequent IRE that is performed will not relate back to the date the IRE was requested, but will be effective, if at all, the date it is performed. Ford Motor/Visteon Systems v. Workers' Compensation Appeal Board (Gerlach), 970 A.2d 517, 522 (Pa. Cmwlth. 2009). Nonetheless, given the statutory and regulatory requirements, we are constrained to conclude that the Board did not err

---

[5] In Stanish, in order to prevent the employer from being deprived of its entitlement under Section 306(a.2)(1) of the Act to obtain self-executing relief, we vacated and remanded to permit the employer to require the claimant to submit to a new IRE. Stanish, 11 A.3d at 577.

10

by reversing the grant of Employer's modification petition because Dr. Gliner was not qualified to perform an IRE of Claimant pursuant to the 6th Edition of the Impairment Guide.

Accordingly, the Board's Order is affirmed.

_____

**RENÉE COHN JUBELIRER, Judge**

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Burger King, : 
:
Petitioner :
:
v. : No. 54 C.D. 2014
:
Workers' Compensation Appeal :
Board (Vrasic), :
:
Respondent :

# **O R D E R**

**NOW**, September 2, 2014, the Order of the Workers' Compensation Appeal Board entered in the above-captioned matter is hereby **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER, Judge**